637 A.2d 317

Thomas H. HOLLORAN and Edith Holloran, H/W

v.

Alberto J. LARRIEU, M.D., David M. Masiak, D.O., Metropolitan Hospital, Parkview Division and Carl G. DiJoseph, D.O., and Bruce S. Margolis, D.O., and Crown Cork and Seal Company, Inc.

Appeal of CROWN CORK AND SEAL COMPANY, INC.

Superior Court of Pennsylvania.

Submitted Dec. 15, 1993.

Filed Feb. 15, 1994.

Joseph R. Glancey, Philadelphia, for appellant.

Shanin Specter, Philadelphia, for Holloran, appellees.

Frederick J. DeRosa, Jr., Philadelphia, for Larrieu, appellee.

John F. O'Brien, III, Plymouth Meeting, for Masiak, appellee.

James L. Griffith, Philadelphia, for Metro. Hosp., appellee.

Adrian R. King, Philadelphia, for DiJoseph & Margolis, appellees.

Before McEWEN, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

Thomas Holloran, a long-time employee of appellant Crown Cork and Seal Co., Inc. (Crown), suffered brain damage from allegedly negligent medical treatment he received at appellee Metropolitan Hospital, Parkview Division. Pursuant to his union contract, Crown paid Holloran's medical expenses resulting from the incident, which now total over $200,000. About four years ago, Holloran began a malpractice action against Metropolitan Hospital and the allegedly negligent doctors. In addition to pain and suffering, loss of life's pleasures, loss of consortium, and other compensable damages, Holloran's complaint sought to recover medical expenses from the hospital and doctors.

The case before us stems from Crown's petition to intervene, pursuant to Pa.R.C.P. 2327. Crown argues that since it has paid Holloran's medical expenses, it is equitably subrogated to Holloran's right to recover these medical expenses from the malpractice defendants.

This issue was briefed and then argued before the Honorable Gene D. Cohen on July 7, 1993. The trial court ruled from the bench that Crown had no right of equitable subrogation, and denied Crown's petition to intervene. The trial court has designated the transcript of this oral argument and bench ruling as its opinion in this case.

■ Crown argues that Pennsylvania law recognizes a right of equitable subrogation in situations such as Holloran's, based upon the doctrine of unjust enrichment. While no case is precisely on point, the nearest cases have involved situations where cities or counties have paid medical expenses of injured police officers or fire fighters, and then sought reimbursement when the injured employees filed suit against the third-party tortfeasors, for damages, including medical expenses.

In *Philadelphia v. Philadelphia Rapid Transit Co.*, 337 Pa. 1, 4, 10 A.2d 434, 435 (1940), our Supreme Court held that "[w]hatever right the city has to recover the payments made by it must of necessity be based upon the equitable doctrine of subrogation." Our high court did not squarely address the issue of whether equitable subrogation did in fact apply, being diverted by procedural matters.

The Superior Court picked up where *Philadelphia Rapid Transit, supra,* left off in *Potoczny v. Vallejo,* 170 Pa.Super. 377, 85 A.2d 675 (1952), holding that a city was indeed entitled to equitable subrogation. The *Potoczny* court offered a particularly lucid and relevant discussion of the doctrine of equitable subrogation:

"The doctrine of subrogation is based "on considerations of equity and good conscience * * * to promote justice * * * [and] is granted as a means of placing the ultimate burden of the debt on the person who should bear it." It is not a matter of contract or privity. It "may be invoked in favor

of persons who are legally obligated to make good a loss caused by the negligent or tortious acts of another." It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." ... "Where the property of one person is used in discharging an obligation owed by another * * *, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee."

*Potoczny, supra* at 380–81, 85 A.2d at 677 (citations omitted).

Our Supreme Court later adopted this rule in *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 352, 180 A.2d 414, 420 (1962) ("There can be no question of the *right* of the County to recover by way of subrogation from a third party tortfeasor all the salary, medical and hospital expenses paid to or for Topelski." (emphasis in original)). In a footnote, our Supreme Court quoted an A.L.R. citation noting that Pennsylvania is the only jurisdiction which recognizes a city or county's right to equitable subrogation in this situation, absent an express statute. *Id.* at n. 3.

Crown acknowledges that the collective bargaining agreement with Holloran's union which obligated it to pay Holloran's medical expenses is silent regarding subrogation rights. But the right of equitable subrogation is an established principle of law in Pennsylvania, Crown argues, and is thus available to Crown since the union contract does not state otherwise. Applying this principle, Crown urges that it would be inequitable to allow Holloran double recovery for his medical expenses.

The Hollorans argue that our courts have never applied the doctrine of equitable subrogation to a situation where a private employer pays for an employee's medical expenses. Contending that this precise issue has never been addressed in Pennsylvania, they cite caselaw from several other jurisdictions which allows such a double recovery for policy reasons. The most thorough and eloquent of these cases is *Frost v.*

*Porter Leasing Corp.*, 386 Mass. 425, 436 N.E.2d 387 (1982), which the Hollorans excerpt at length in their brief.

*Frost* distinguishes the policies which underlie property indemnification contracts from personal injury insurance. Property insurance coverage usually involves liquidated amounts comparable to the actual damages suffered. Here, the doctrine of equitable subrogation can be applied accurately and efficiently. Personal insurance is thought of less as an indemnity contract than as a form of personal investment. The injured is more likely to have sustained intangible losses, and is less likely to be made truly whole by an award. An insured who pays a premium for coverage is entitled to be completely reimbursed before the insurer's equitable right of subrogation is activated. Also, a subrogee's intervention could conceivably make settling a case more difficult.

In *Frost*, the insured had already negotiated a lump-sum settlement with the third-party tortfeasor, so the court was loath to expend more resources in determining what part of that recovery could be earmarked as medical expenses. Hence, the *Frost* court saw fit to withhold the doctrine of equitable subrogation, and allow a personal injury victim possible double recovery. *Frost, supra* at 427–32, 436 N.E.2d at 389–91.

The trial court heard these arguments, and ruled from the bench in the Hollorans' favor, denying Crown's petition to intervene. While we ordinarily appreciate brevity in briefs and opinions, this "opinion" leaves us with very little to go on. The trial court held:

> There are two issues involved here. One, whether Crown Cork had negotiated away its rights to recover [via] subrogation. Because apparently in the briefs it is stated that some other contracts with other locals had left the right of subrogation in the medical plan.
>
> \*      \*      \*      \*      \*      \*
>
> [Two:] [T]here is no equitable right of subrogation in this type of case. The reasoning behind this reluctance to extend implied rights of subrogation from the limited situa-

tion is well explained in many cases.[1]   However, the court will base its decision as follows: Some Pennsylvania common law does not recognize a right of equity subrogation for medical and salary benefits absent a contractual agreement providing for subrogation.   In the instant case the contract between Crown and Holloran is silent regarding rights of subrogation.

Furthermore, Crown apparently negotiated that right away in exchange for which it can be safely said that the union gave him other benefits.

For these two reasons the court will not permit intervention.

Trial court opinion (from oral argument transcript) 7/7/93 at 13–14, appellant's brief at 23–24.

■   As an appellate court, we will not disturb a trial court's ruling on a petition to intervene absent an abuse of discretion or an error of law.   *Wilson v. State Farm Mutual Auto Ins. Co.*, 512 Pa. 486, 517 A.2d 944 (1986).   Because we find the trial court's decision is neither supported by the facts of record, nor by what little Pennsylvania law there is on this subject, we must reverse.

## I.

We would agree with the trial court that if Crown had explicitly discussed and surrendered subrogation rights in its union contract negotiations, then Crown should not be granted an equitable right of subrogation in this case.   Unfortunately, there is not one iota of evidence in the record which supports this conclusion.   The company handbooks detailing medical coverage make no mention of subrogation rights.   *See* Handbook, "Your Employee Benefit Plan at Crown," R.R. 36–42. If subrogation rights were a point of negotiations, then we would expect to see a statement somewhere in this handbook, the union contract or medical plan stating whether Crown is

1.   We presume the trial court is referring here to the many cases from other jurisdictions cited in the Hollorans' brief, particularly *Frost, supra.*

or is not subrogated to medical expense claims which it has paid on behalf of employees. The parties have not brought any such evidence to our attention.

According to its opinion, the trial court based its conclusion on the arguments in the parties' briefs, which contain correspondence between the Hollorans' attorney and Crown's attorney on this topic. The first letter is from the Hollorans' attorney, confirming a conversation in which Crown's attorney allegedly admitted that Crown had bargained away subrogation rights. Crown's attorney sent a reply letter stating that he had never said any such thing; rather, Crown's attorney acknowledged that other union contracts contain subrogation language, but that he had no idea if subrogation was even mentioned in contract negotiations with Holloran's union. *See* appellant Crown's reply brief to Hollorans' brief at 4–5. Since we can find no other evidence in the record on this issue, we must assume that the argument in the parties' briefs about Crown negotiating away subrogation rights is based on this exchange.

As a general principle of law, an appellate court does not substitute its interpretation of the evidence for the trial court's. "Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion." *Thompson v. City of Philadelphia*, 507 Pa. 592, 599, 493 A.2d 669, 673 (1985) (discussing weight of the evidence review). Here, however, the record does not support the trial court's finding that Crown had negotiated away its subrogation rights. The exchange between the Hollorans' and Crown's attorneys is not evidence. The record simply contains no genuine evidence on this matter, so the trial court has no basis for its conclusion.[2] Hence, we must conclude that the

2. The Hollorans offer the employee benefit handbook and the letter of their attorney to support their contention that "[a]s part of contract negotiations, Crown Cork & Seal agreed not to pursue any subrogation claims such as the one involved in this case." Appellees' brief at 16. As noted before, the handbook is entirely silent on subrogation; the letter, without its response from Crown denying its claims, is self-serving.

trial court abused its discretion in finding that Crown has no right of subrogation for this reason.

## II.

The other reason the trial court offered for its decision is that "Some Pennsylvania common law does not recognize a right of equity subrogation for medical and salary benefits absent a contractual agreement providing for subrogation." Trial court opinion (from oral argument transcript) 7/7/93 at 14, appellant's brief at 24. Sadly, the trial court does not tell us what cases so hold. Both parties acknowledge that there is no Pennsylvania law directly on point. Hence Crown analogizes to the cases recognizing a city's or county's right of equitable subrogation, while the Hollorans cite caselaw from other jurisdictions which is on point. Since the trial court does not offer us the benefit of its reasoning and research, we must conduct our own. After reviewing the cases and the policies underlying them, we believe that Crown should enjoy an equitable right of subrogation in this case.

The Hollorans argue that our courts have never recognized that a private employer or insurer is entitled to subrogation for medical expenses paid on behalf of an employee absent an express subrogation agreement (i.e., an equitable right of subrogation). The Hollorans claim that the closest our courts have come to addressing this issue was in the case of *Associated Hospital Service of Philadelphia v. Pustilnik*, 262 Pa.Super. 600, 396 A.2d 1332 (1979) *vacated on other grounds*, 497 Pa. 221, 439 A.2d 1149 (1981). Contrary to the Hollorans' reading of *Pustilnik*, we find that this case contains broad language recognizing an equitable right of subrogation.

The issue in *Pustilnik* was whether an insurer which had a contractual (hence legal) right to subrogation could sue in equity for the same purpose. We began by quoting the principles of equitable subrogation outlined in *Potoczny, supra*. We then concluded that when a contract provides for subrogation, it merely declares rights which already exist in equity. "Because Blue Cross' subrogation right existed in

equity whether or not that right was recognized in its subscription agreement with Pustilnik, equity could hear Blue Cross' claim." *Pustilnik, supra* at 609, 396 A.2d at 1336.[3]

The Hollorans offer no reason for distinguishing between the insurer in *Pustilnik* and the private employer in the present case. We must therefore agree with Crown that Pennsylvania law provides an equitable right of subrogation here. Since Mr. Holloran's employment contract did nothing to alter this right, it should apply in the present case, unless sound policy considerations dictate otherwise.

### III.

The Hollorans do offer contrary policy considerations as set forth in the *Frost* case from Massachusetts. We agree that the *Frost* decision is well reasoned, but disagree with the Hollorans' contention that their situation "is exactly the kind of case that the *Frost* Court was talking about." N.T. 7/7/93 at 8, appellant's brief at 18. In *Frost,* the plaintiff had already negotiated a lump-sum settlement with the third-party tortfeasor when the insurer sought to recoup what it had paid to the plaintiff in medical expenses through subrogation. No amount of this lump sum had been earmarked as representing medical expenses. The Supreme Court of Massachusetts weighed the plaintiff's interest in full compensation against the insurer's right to reimbursement through subrogation. The court felt that the cost of determining what portion of the settlement represented subrogable medical expenses would probably consume any excess recovery, and thus leave the plaintiff less than fully compensated. *See Frost, supra.*

The Hollorans' situation is quite different from the plaintiff in *Frost.* The medical expenses in question here are already liquidated—we know exactly how much Crown has paid out on

3. On appeal, our Supreme Court affirmed the principle of equitable subrogation adopted by the Superior Court, but vacated and remanded to recalculate the amount which Blue Cross was due as subrogee. Our Supreme Court noted that Blue Cross could not claim as subrogee any more money than it had actually paid out on behalf of its insured. *Associated Hospital Service v. Pustilnik*, 497 Pa. 221, 225–27, 439 A.2d 1149, 1151 (1981).

behalf of Mr. Holloran. By recognizing Crown's equitable right of subrogation at this point, we are simply saying that Crown stands in the Hollorans' shoes for purposes of recovering these medical expenses. The malpractice defendants are on notice that Crown holds this particular claim, instead of the Hollorans.

Allowing this subrogation will not discourage settlement. Any settlement can either include Crown, or the malpractice defendants can negotiate with and defend against Crown and the Hollorans separately. If the Hollorans want to settle, they may do so independently; Crown may pursue or settle its claim for the medical expenses independently of the Hollorans.

We also must reject the Hollorans' argument from *Frost* that they can never truly be made whole, hence double recovery for medical expenses would not be unjust enrichment. The *Frost* court recognized that a pre-trial lump-sum settlement was less likely to represent full compensation to the plaintiffs than what they might have hoped to receive from a jury. Here, the Hollorans still have the opportunity to make their case to a jury and be compensated for specific elements of damage: pain and suffering, loss of life's pleasures, loss of consortium, etc. If they are successful in their malpractice action, then the jury will return a verdict which makes them whole. But the Hollorans do not need to recover the medical expenses in question to make themselves whole, because they never paid them. Allowing the Hollorans to obtain double recovery, when they have the best opportunity which our legal system provides to recover all damages properly due them, would be classic unjust enrichment.

The trial court did express some concern over the footnote in *Topelski, supra,* which acknowledged that Pennsylvania is the only jurisdiction which allows a city or county a right of equitable subrogation for medical expenses paid on behalf of its employees. Trial court opinion (from oral argument transcript) 7/7/93 at 12, appellant's brief at 22. We do not share the trial court's concerns. Our Supreme Court does not hesitate to take Pennsylvania law in directions different from our sister jurisdictions, when a situation justifies it. In *Topel-*

*ski,* our Supreme Court merely noted that Pennsylvania law was unique in this respect—our high court expressed neither approval nor concern over its application of equitable subrogation principles, but merely endorsed it with its decision in the case. Similarly, we feel that the facts in this particular case favor a right of equitable subrogation, and even if Pennsylvania stands alone in this regard, we would not retreat from our holding.[4]

## IV.

■ Metropolitan Hospital, one of the malpractice defendants, has filed a brief urging us to deny Crown's petition to intervene because Crown has waited four years since the Hollorans filed their original suit to bring its petition. Metropolitan Hospital argues that the statute of limitations has lapsed with respect to Crown, and that the Hospital should not have to incur more litigation costs while Crown "catches up" in discovery matters.

Metropolitan hospital is mistaken as to its first argument for denying Crown's petition. Since Crown stands in the Hollorans' shoes for subrogation purposes, its timeliness in petitioning to intervene is measured by the statute of limitations as it accrues against the Hollorans, the subrogors. *Insurance Company of North America v. Carnahan,* 446 Pa. 48, 49–51, 284 A.2d 728, 729 (1971). As to the second argument, Metropolitan Hospital did not raise this at the trial, and has thus waived it for appeal. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

It is, of course, a time-honored principle that he who seeks equity must do equity. Crown should not be permitted to enter the litigation at this point without bearing its proportional share of the litigation costs.[5] If Metropolitan Hospital can prove that it has incurred costs which it would not have

4. We note that our present holding is not contrary to the well-reasoned Massachusetts case of *Frost, supra,* because of the considerable factual differences.

5. While malpractice litigation is often quite costly, the presentation of medical expenses is usually the simplest part of the case.

otherwise incurred had Crown intervened promptly, then these costs may be properly charged to Crown. Since the court's equity jurisdiction has been invoked by Crown's petition to intervene, we would have litigation costs distributed equitably in this case.

The order denying Crown's petition to intervene is reversed, and this case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

McEWEN, J., concurs in the result.