**Roush v. Gelnett**

C.P. of Snyder County, no. 290-1994.

*Pamela G. Shuman,* for plaintiffs.
*Joey A. Storaska,* for defendants Gelnett.
*John B. Campana,* for defendant Golden.
*Daniel D. Huyett,* for Capital Blue Cross.

WOELFEL, *J.,* June 4, 1996—Before the court is the plaintiffs' petition for approval of minor's settlement, which seeks the approval of this court of a settlement in the amount of $96,000 dollars for all claims made by the plaintiffs against the defendants arising out of the accidental shooting of Shane Roush by his minor friend, Jeffrey Gelnett. The shooting occurred in the home of defendants Lois Gelnett and Frederick Golder. The settlement was arrived at shortly before trial. The insurance policy limits available for the defendants are $100,000. The petition reflects that Capital Blue Cross/Pennsylvania Blue Shield is seeking reimbursement for claims it paid to various entities "for Shane's shooting-related medical expenses." Petition, paragraph 26.

The petition seeks the approval of the $96,000 settlement, a determination as to what, if any, sums are

due out of the settlement to Capital Blue Cross/Pennsylvania Blue Shield, an award of 35 percent of the gross recovery to counsel for defendant, the payment of out-of-pocket expenses to counsel for the plaintiff, and the court's permission for the parents of Shane Roush to spend $6,000 for items that Shane "wants but his parents cannot afford" (Petition, paragraph 36), with the balance of the settlement proceeds to be deposited in an insured bank account.

The proposed settlement of $96,000 causes us no concern. Nor does the payment of $2,653.38 in out-of-pocket costs and expenses related to the litigation.

## SUBROGATION CLAIM

Plaintiff Scott Roush is employed at Wood-Mode Inc. As a benefit of his employment, he and his dependents are provided with medical insurance through Capital Blue Cross/Pennsylvania Blue Shield. The bills for the grievous abdominal injuries suffered by Shane have been paid for by Capital Blue Cross/Pennsylvania Blue Shield. At the hearing held on the instant petition the testimony reflected that a total of $56,530.97 of medical bills related to this shooting incident have been paid by Capital Blue Cross/Pennsylvania Blue Shield.[1]

At the said hearing a copy of a "Handbook for Employees of Wood-Mode Inc." was introduced by Capital Blue Cross/Pennsylvania Blue Shield as claimants exhibit no. 5. Scott Roush acknowledged receiving a copy of the said handbook. The following appears at page 45 of the handbook:

---

1. In both the instant petition and filings made by Capital Blue Cross/Pennsylvania Blue Shield, various sums have been alleged as due and owing. We believe that the testimony at the hearing adequately supported the figure of $56,530.97

## *Subrogation*

To the extent that benefits for covered services are provided or paid under this program, the plan should be subrogated and succeed to any rights of recovery of the subscriber for expenses incurred against any person or organization except insurers on policies of health insurance issued to and in the name of the subscriber.

You shall pay the plan the amount recovered by suit, settlement, or otherwise, from any third party or his insurer to the extent of the benefits provided or paid under this program.

You shall take such action, furnish such information and assistance, and execute such papers as the plan may require to facilitate enforcement of its rights, and shall take no action prejudicing the rights and interests of the plan under this program.

These provisions shall not apply where subrogation is specifically prohibited by law.

At page 6 of the handbook a subscriber was defined as follows:

*"Subscriber*—an eligible person who has satisfied the specifications for eligibility as defined in this booklet and who has enrolled for coverage under this program."

At page 44 of the handbook the following appears:

*"Eligibility*

"Those eligible to enroll for the comprehensive major medical coverage are the employee, the employee's spouse, and unmarried children under 19 years of age who are the employee's children. . . ."

Thus, Shane Roush was eligible to receive benefits from Capital Blue Cross/Pennsylvania Blue Shield by virtue of his father's employment at Wood-Mode, and by virtue of the definitions contained in the handbook,

was defined as a subscriber who was obligated to co-operate with Capital Blue Cross/Pennsylvania Blue Shield concerning subrogation claims which it may make as a consequence of claims and recoveries made by the Roushes against third parties.

Plaintiffs contend that a minor has no obligation to pay his own medical bills, that the payment of those bills is the minor's parents' responsibility, that the parents are receiving no benefit from this settlement, and that the parents' only claim was the medical bills incurred. The plaintiffs further contend that it would be "inequitable to allow Capital Blue Cross to recover from Shane's settlement sums that this minor could not recover through a lawsuit and has no obligation to pay." Page 2, plaintiffs' supplemental brief in support of petition for approval of minor's settlement.

Distilled to its essence, plaintiffs' assertion is that there is no right of subrogation either by contract or in equity against the minor. Curiously, neither counsel for the plaintiffs nor for Capital Blue Cross/Pennsylvania Blue Shield, nor this court, have been able to find a case directly addressing the issue of a subrogation claim of a medical insurance provider for medical bills incurred on behalf of a minor. The instant matter is not the first case in which medical insurance which is provided as a benefit to a parent has paid medical bills incurred by a child of that parent who is covered through the medical insurance plan, with the plan then pursuing subrogation. We can only conclude that the paucity of cases in this area is because it is assumed without question that the right of subrogation extends to sums recovered by or on behalf of minors.

The right of subrogation can either be created by contract or arise in equity. *Holloran v. Larrieu,* 431 Pa. Super. 558, 637 A.2d 317 (1994). As noted above,

the handbook, which defines the relationship between Capital Blue Cross/Pennsylvania Blue Shield on the one hand, and the employees of Wood-Mode on the other, provides for subrogation for benefits paid on behalf of its subscribers, with all of the plaintiffs being encompassed within the definition of subscribers.

Concerning the doctrine of equitable subrogation: "[t]he doctrine of subrogation is based on considerations of equity and good conscience . . . to promote justice . . . [and] is granted as a means of placing the ultimate burden of the debt on the person who should bear it. It is not a matter of contract or privity. It may be invoked in favor of persons who are legally obligated to make good a loss caused by the negligent or tortious acts of another. It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. . . . Where the property of one person is used in discharging an obligation owed by another . . ., under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee." *Holloran v. Larrieu, supra* at 560-61, 637 A.2d 318, quoting *Potoczny v. Vallejo,* 170 Pa. Super. 377, 380-81, 85 A.2d 675, 677 (1952). (citations omitted)

If the doctrine of equitable subrogation is to cause the person who committed the negligent or tortious acts to bear the responsibility for those acts, we can see no reason why recovery made from the defendants should not be made available to the subrogation claim of Capital Blue Cross/Pennsylvania Blue Shield.

As noted above, the plaintiffs contend that the subrogation claim against the minor should not be permitted in this personal injury case. However, subrogation claims against children are specifically permitted by

statute in the context of workers' compensation,[2] and for medical assistance payments made by the Department of Public Welfare.[3] As noted above, we can find no Pennsylvania case which holds that a subrogation claim against a minor is barred. We believe that the claim of Capital Blue Cross/Pennsylvania Blue Shield must be sustained both on a contractual and an equitable basis.

We would also point out that the complaint filed in this matter contained a claim by the parents of Shane in their individual capacities for the costs of "medical treatment, medicine, hospitalization, and miscellaneous expenses [incurred by the parents] in an effort to restore their son to health." Complaint, paragraph 51.

## ATTORNEY'S FEES

Plaintiffs' counsel has represented heretofore that her first-time entry occurred on June 22, 1994. The case was taken on a contingent fee basis, but, as is wise, counsel represented to the court that she kept contemporaneous time records. Those time records indicated that she spent a total of 143.5 hours working on this matter. The contingent fee agreement provided that plaintiffs' counsel would receive 30 percent of any recovery made before suit was instituted, 35 percent of any recovery made after suit was started but before work in preparation for trial was performed, and 40 percent of any recovery made after work for trial was completed. Plaintiffs' counsel also represented that she receives $300 per hour for all work performed on an hourly basis. Counsel indicated that this was not a factually difficult case, that there was some concern over

2. 77 P.S. §761.
3. 62 P.S. §1409.

what role, if any, Shane played in the accidental shooting that resulted in his injuries, and that Shane had complicated medical problems. Counsel seeks an award of 35 percent of the gross settlement figure as counsel fees.

Pennsylvania Rule of Civil Procedure no. 2039 requires court approval of any settlement and discontinuance of a minor's action. The same rule requires court approval of counsel fees.

"The factors to be taken into consideration by the court when determining the reasonableness of counsel fees include, but are not limited to, (1) the amount of worked performed; (2) the character of the services rendered; (3) the difficulty and importance of the litigation; (4) the amount of money in question; (5) skill and standing of the attorney(s); (6) the client's ability to pay." *Shaw v. Bradley,* Superior Court of Pennsylvania, no. 00969 Pittsburgh, 1995, filed February 27, 1996, citing *LaRocca Estate,* 431 Pa. 542, 246 A.2d 347 (1968); *Gilmore by Gilmore v. Dondero,* 399 Pa. Super. 599, 582 A.2d 1106 (1990).

We would note that there was no testimony offered in support of the claim for attorney's fees. Rather, the only information provided to the court came through the representations of counsel herself.

By counsel's own assessment, this was not a difficult factual matter. The amount of money involved is $96,000, representing 96 percent of the policy limits. Settlements for or close to policy limits have been perceived as, at least in part, a concession that liability is not a significant contention. Counsel did not represent to the court that the issue of liability was complex. While certainly Shane Roush sustained grievous injuries that were most traumatic to him and his family, this litigation was, in the context of other personal injury

litigation, not a difficult one, or important in the sense of addressing new legal issues, making new law, or having wide-ranging impact beyond the parties directly involved. The amount of filings made by the parties, the taking of eight depositions, and plaintiffs' counsel having met with two treating physicians does not strike the court as being an unusually excessive amount of work in the context of this type of litigation. The character of the services rendered by counsel in this matter, would, again in the context of this type of personal injury litigation, seem to be routine. Plaintiffs' counsel, again, the only person to offer anything in this area to the court, did not represent to the court that there was anything unique regarding the character of the services which she rendered to her clients in this matter.

Counsel represented to the court that she was a magna cum laude graduate of Dickinson School of Law in 1984. Thus, she had approximately 10 years experience as an attorney at the commencement of her representation of the plaintiffs in this matter. She further represented that she was an active member of the Pennsylvania Trial Lawyers Association and the American Trial Lawyers Association, having spoken at programs put on by both the Pennsylvania Trial Lawyers Association and Pennsylvania Bar Association.

The only fund out of which the plaintiff is obligated to pay counsel fees is the fund comprised of the settlement. The testimony offered at the hearings on the instant petition offered a picture of the plaintiffs being solid middle-class citizens of Snyder County without substantial cash resources to bear the expenses of Shane's injuries or expenses and legal fees incurred.

Based upon the above, and having considered the competing interest of the plaintiffs, Capital Blue Cross/Pennsylvania Blue Shield, and plaintiffs' counsel,

we believe that attorney's fees of $24,000, representing 25 percent of the gross recovery are appropriate.

## DISTRIBUTION OF SETTLEMENT PROCEEDS

We believe that the distribution plan set forth below, while calculated in what some may perceive as an unusual manner, is designed in recognition of our "role and obligation as caretaker of the minor defendant's financial interests." *Shaw v. Bradley,* at page 4 of slip opinion.

The $96,000 settlement will be approved. A fee of 25 percent of the gross recovery, $24,000, will be awarded to counsel for the plaintiff, leaving $72,000. From that sum Capital Blue Cross/Pennsylvania Blue Shield will be awarded $37,683.31, two-thirds of its claim, the one-third it is not receiving being the amount of attorney's fees which it would typically have to pay in a situation of this kind. The remaining sum of $34,312.69 will be awarded to the minor. The out-of-pocket expenses of $2,653.38 will be borne by Capital Blue Cross/Pennsylvania Blue Shield and the plaintiffs respectively and in proportion to their respective recoveries, with Capital Blue Cross/Pennsylvania Blue Shield paying 52.3 percent of those costs, or $1,387.72, and the plaintiffs paying 47.7 percent of those costs or $1,265.66.

This method of distribution attempts to treat each of the claimants fairly while recognizing the relatively limited amount of money available to meet those competing needs, as well as recognizing the grievous nature of the injuries sustained. We believe that this plan of distribution, as opposed to one which would deduct from the gross amount of the settlement the subrogation claim, giving two-thirds of that amount to the claimant and one-third to counsel, and then awarding the remaining portion, less a 25 percent attorney's fee to the minor plaintiff, is fairer to all concerned.

We are not prepared to honor the request of the parent-plaintiffs that we permit them to spend $6,000 for items that Shane wants without further clarification.

An order consistent with this opinion will be entered.

## ORDER

And now, June 4, 1996, upon consideration of the plaintiffs' petition for approval of minor's settlement it is hereby ordered:

(1) The settlement of all claims of the plaintiffs for the sum of $96,000 is hereby approved. The parent-plaintiffs are authorized to sign any and all documents necessary to give effect to the said settlement.

(2) From the said settlement proceeds the following sums shall be paid to their entities named.

(2.1) $24,000 to Angino and Rovner P.C., counsel for the plaintiffs, for attorney's fees.

(2.2) $2,653.38 to Angino and Rovner P.C., for costs and expenses incurred in this litigation.

(2.3) The sum of $36,295.59 to Capital Blue Cross/Pennsylvania Blue Shield on their subrogation claim, representing two-thirds of the amount of the medical bills paid, less 52.3 percent of the costs and expenses referred to in paragraph 2.2, above.

(2.4) The sum of $34,312.69 shall be placed in one or more savings accounts in the name of Shane Roush in banks, building and loan associations, or savings and loan associations deposits which are insured by a federal government agency, provided that the amount deposited in any one such savings institution shall not exceed the amount to which accounts are thus insured. No withdrawal shall be made from any such account until the minor attains his majority, except as authorized by prior order of the court. Proof of the deposit or deposits shall be promptly filed of record.