John L. THOMPSON, Petitioner,

v.

WORKERS' COMPENSATION AP-PEAL BOARD (USF & G COMPANY and Craig Welding & Equipment Rental), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 1998.

Decided April 9, 1999.

Reargument Denied June 18, 1999.

James J. Gillespie, Jr., Pittsburgh, for petitioner.

John L. Kwasneski, Pittsburgh, for respondents.

Before McGINLEY, J.,
LEADBETTER, J., and RODGERS,
Senior Judge.

RODGERS, Senior Judge.[1]

John L. Thompson (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the order of a workers' compensation judge (WCJ) granting the petition of Craig Welding & Equipment Rental (Employer) and its carrier, USF & G, to suspend compensation and enforce subrogation rights. We reverse.

On August 5, 1988, Claimant sustained work-related fractures of his skull, jaw, and ribs and loss of teeth, when the platform of a crane upon which he was standing collapsed. Eleven days later, a takedown and inspection of the crane was performed. Present at the inspection, among others, were Mr. Craig, president of Employer, Dr. Geiger, an expert retained by USF & G, a representative of the maker of the crane and a representative of the owner of the crane. The inspection revealed that the accident occurred because the five bolts anchoring the platform had either become loosened or broken in half. Three of the five bolts were recovered from the bottom of the crane, one bolt was severed in two and one bolt was never found. At the conclusion of the inspection, Mr. Craig retained possession of the bolts. Thereafter, pursuant to a notice of compensation payable, Claimant began receiving compensation benefits and medical payments.

Claimant and his wife instituted a negligence, strict liability and breach of warranty action against the crane's manufacturer and owner in the Court of Common Pleas of Allegheny County (trial court), claiming damages for lost wages, medical bills, pain and suffering, mental anguish and scarring, and loss of consortium. Prior to trial, Mr. Craig lost the bolts.

At trial, Dr. Geiger testified, *inter alia*, that if the bolts were available, they could be measured for elongation and compared to the bolts called for in the specifications for the crane to determine whether they were the original bolts placed by the factory and were of the right grade. On November 18, 1993, the manufacturer and the owner of the crane moved *in limine* that the trial court preclude any evidence of Claimant's lost wages or medical bills, arguing that their clients were prejudiced by Claimant's failure to produce the bolts. At the request of the trial judge, the attorney for the compensation carrier and their claim personnel were present at various stages of the trial and in chambers discussions, and were aware of the motions *in limine*, but did not seek to intervene or become a party to the action. The trial court granted the motions.

The case subsequently settled for $300,000, with $200,000 allocated to Claimant for pain and suffering, and $100,000 allocated to his wife for loss of consortium. The trial court approved the settlement, noting in its order that Claimant's claim for medical bills and lost wages was precluded and that the $300,000 settlement was exclusive of all medical bills and lost wage payments made by USF & G, "whose

---

1. This case was reassigned to the author on February 16, 1999.

subrogation claim has been completely compromised by its insured's destruction of vital evidence in this case." (Order dated February 2, 1994, R.R. 168–69.)

In April 1994, Employer and USF & G filed a petition to suspend compensation benefits and enforce subrogation rights in the amount of $105,744.63. After a hearing, the WCJ granted Employer's petition, concluding that Employer's right to subrogation is absolute. On appeal, the Board affirmed. This appeal followed.[2]

■ The issue in this case is whether Employer and its workers' compensation carrier should be barred on equitable grounds from enforcing their subrogation rights in this workers' compensation proceeding when they chose not to intervene in the tort action after notice from the trial judge that he was going to grant the motions *in limine* of the crane's manufacturer and owner, precluding any evidence of Claimant's lost wages and medical bills because the Employer had lost the bolts.

■ A personal injury claimant who inadvertently destroys or loses the defective product may be barred from recovering any damages from the alleged tortfeasor. *Schroeder v. Department of Transportation*, 551 Pa. 243, 710 A.2d 23 (1998).

In this case Employer and its compensation carrier, who have inadvertently lost the defective product, claim they are entitled to be fully reimbursed from the proceeds of any recovery by the Claimant from the third party tortfeasor without any sanction.

They argue this disparate treatment is required because Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, gives the employer an absolute right to subrogation regardless of the equities, relying on *Winfree v. Philadelphia*

*Electric Company*, 520 Pa. 392, 554 A.2d 485 (1989). However, in *Winfree*, the employer had been joined as an additional defendant in the tort action and was necessarily placed in an adversary position to the claimant. It was for this reason that the Supreme Court found insufficient equitable basis to deny subrogation. *Id.*

In this case, the trial judge had notified the compensation carrier that Claimant would not be permitted to claim damages from the defendant tortfeasors for medical expenses and lost wages on behalf of the carrier, because its insured, Claimant's employer, had lost the defective product. Although Employer then had a right to intervene in the third party tort action and appeal the trial judge's ruling, *Holloran v. Larrieu*, 431 Pa.Super. 558, 637 A.2d 317 (1994), it chose to ignore the ruling and seek subrogation in this workers' compensation proceeding.

Here, Claimant had the right to pursue or settle his claims against the third party tortfeasors independently of the subrogation claim of Employer, and Employer and its compensation carrier had the right to pursue or settle its claims against the third party tortfeasors for recovery of payments made for medical expenses and wage loss, independently of the claims of Claimant for pain and suffering and loss of consortium. *Id.*

A trial judge cannot efficiently dispose of tort claims unless he or she has the ability to require all interested parties to try or settle their claims in the case called for trial. In this case, the compensation carrier chose to ignore the ruling of the trial judge and to seek reimbursement for its subrogation claim not from the third party tortfeasors, but from the proceeds of Claimant's settlement for his damages, which did not include any damages arising out of the subrogation claim.

---

2. Claimant does not appeal that portion of the Board's order affirming the WCJ's grant of Employer's petition to suspend compensation. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

Accordingly, the subrogation claim is denied on equitable grounds and the Board's order is reversed.

### ORDER

NOW, April 9, 1999, the order of the Workers' Compensation Appeal Board, at No. A95–0491, dated December 20, 1996, is reversed.

LEADBETTER, Judge, dissenting.

I must respectfully dissent. Our Supreme Court, in *Winfree v. Philadelphia Electric Co.*, stated unequivocally that an employer's subrogation right under Section 319 is absolute. 520 Pa. 392, 397, 554 A.2d 485, 487 (1989). Moreover, in *Kelly v. Workmen's Compensation Appeal Bd. (A–P–A Transport Corp.)*, 107 Pa.Cmwlth. 223, 527 A.2d 1121, 1122–23 (1987), this court examined allegations of employer wrongdoing and concluded that equitable considerations did not outweigh the mandatory language of Section 319. In that case, claimant argued that the employer willfully obstructed his ability to negotiate and obtain a third party settlement by refusing to voluntarily provide records and denying that he had suffered any injury. We noted that "any allegation of wrongdoing by the employer must be weighed against the plain wording of the statute which gives the employer an unqualified right to subrogation." 527 A.2d at 1122, citing *Meehan v. City of Philadelphia*, 184 Pa.Super. 659, 136 A.2d 178 (1957) and *Curtis v. Simpson Chevrolet*, 348 F.Supp. 1062 (E.D.Pa.1972).

Here, I would also find insufficient equitable basis to override the clear statutory mandate. Employer in this case is not even alleged to have acted in bad faith, as was claimed in *Kelly*. Indeed, Craig's negligence was as potentially harmful to his company's interests as to those of the plaintiff/claimant. Moreover, claimant, a party to the tort suit, did not seek to protect employer's interest by contesting the court's ruling, but instead settled the case on the basis that only those damages inuring to his benefit would be paid, while those that would be passed on to employer would not.[1] In adopting his settlement strategy, claimant assumed the risk that the Worker's Compensation tribunals, which are vested with the authority to determine questions of subrogation (as the courts of common pleas are not), would follow the statute they are charged with enforcing.

Under these circumstances, I do not believe that the WCJ or the Board erred in doing so. Accordingly, I would affirm the order of the Board.

---

1. While the majority states that employer had a right to intervene and to "pursue or settle its claims against the third party tortfeasors ... independently of the claims of Claimant for pain and suffering ...," it is not at all clear to me that a petition to intervene for the express purpose of frustrating a settlement would have been allowed by common pleas, nor that employer could have pursued its claims independently after claimant gave a release for his injuries.