496 S.E.2d 653

**Richard SHUMPERT and Lois Shumpert, Appellants,**

**v.**

**TIME INSURANCE COMPANY, Respondent.**

**No. 2782.**

Court of Appeals of South Carolina.

Submitted Jan. 6, 1998.

Decided Jan. 12, 1998.

Rehearing Denied Mar. 19, 1998.

606

608

Mitchell J. Williams and Robert F. McMahan, Jr., both of Harris & Graves, Columbia, for Appellants.

William R. Calhoun, Jr., and William O. Sweeny, III, both of Sweeny, Wingate, Murphy & Barrow, Columbia, for Respondent.

ANDERSON, Judge:

This appeal concerns a claim for subrogation by a health insurance provider against an insured's recovery from a third-party tortfeasor. At issue is whether the insurer is entitled to subrogation when the health insurance policy does not contain a subrogation clause as provided by S.C.Code Ann. § 38–71–190 (Supp.1996). The circuit court held a health insurer may still recover under the theory of equitable subrogation in the absence of an express contractual provision for subrogation. The court denied the Shumperts' claim for bad faith. We affirm in part and reverse in part.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Appellant Richard Shumpert purchased a health insurance policy from Respondent, Time Insurance Company, in 1976. In July of 1991, he was seriously injured in an automobile wreck caused by another driver. Pursuant to the policy, Time paid Shumpert a total of $18,818.76 for medical bills incurred due to the accident.

The Shumperts initiated a civil action against the at-fault driver.[2] By letter dated November 30, 1992, Time advised the

---

**1.** We decide this case without oral argument pursuant to Rule 215, SCACR.

**2.** Appellant Lois Shumpert, Richard's wife, asserted a claim for loss of consortium.

Shumperts, through their attorney, that it had a right of subrogation. A legal assistant from the firm representing the Shumperts responded to Time on December 8, 1992 that "[w]e will honor your right of subrogation on the above referenced insured." In February of 1993, the Shumperts' attorney asked for documentation supporting Time's claim for subrogation. Time asserted it was basing its "equitable right of subrogation on South Carolina law." Time continued periodically to send letters to the Shumperts' attorney asserting its subrogation lien. However, the attorney stated that once he took control of the case, he never responded to any of these letters.

On February 16, 1996, the Shumperts' attorney informed Time the at-fault driver had agreed to a settlement. The attorney advised Time that he did not believe equitable subrogation applied in a health insurance context, and if Time did not inform him within one week that it would not assert a subrogation lien, he would "take all steps necessary to have this matter judicially resolved." The Shumperts' case against the driver was settled for $75,000.

The Shumperts thereafter brought an action against Time seeking a declaration that Time had no subrogation interest in the settlement proceeds because there was no provision in the contract for subrogation. The Shumperts alleged a claim for bad faith for Time's assertion of a subrogation interest when it had failed to include a subrogation clause in the policy. Time answered and counterclaimed, maintaining it had an *equitable* subrogation interest and alleging a claim for bad faith based on Richard Shumpert's "assuring [T]ime that he would honor [Time's] subrogation claim against [the Shumperts'] settlement with a third-party tortfeasor [and by] stringing [Time] along and leading it to believe that" he was going to honor his "recognized obligation."

The Shumperts and Time both filed motions for summary judgment. In its supporting memorandum, the Shumperts' attorney stated the December 8, 1992 letter acknowledging Time's assertion of a subrogation lien was merely a "professional courtesy," and that counsel did not address the validity of the claim because he did not have a copy of the policy at that time.

In an order dated December 19, 1996, the circuit court granted Time's motion for summary judgment and denied the motion made by the Shumperts. The court ruled Time was entitled to equitable subrogation in the absence of a contractual provision in the health insurance policy allowing subrogation, and determined Time was entitled to subrogation in the amount of $18,818.76. The order did not mention the bad faith claims. The Shumperts served a notice of appeal on December 31, 1996.

On January 6, 1997, Time's counsel wrote a letter to the court informing it of a typographical error in the order.[3] By letter dated January 7, 1997, the Shumperts' attorney informed the court that the December 19th order made no mention of the bad faith claims. The Shumperts' counsel did not mention an offset for attorney's fees in this letter.

In an amended order dated January 21, 1997, the court corrected the typographical error and denied both parties' claims for bad faith. The court denied any demand for contribution to litigation expenses by Time, but did not address offset for the Shumperts' litigation expenses from the subrogation award. The Shumperts appeal.

## ISSUES

1. Did the circuit court err in finding a health insurance provider may obtain equitable subrogation of an insured's recovery against a third-party tortfeasor when it fails to include a subrogation provision in the health insurance policy as provided by section 38–71–190?

2. Did the circuit court err in determining the amount of Time's subrogation interest and in ruling that Time did not have to reduce its subrogation claim by the proportionate share of litigation expenses when such a reduction is required by statute?

3. Did the circuit court err in granting summary judgment in favor of Time on the Shumperts' bad faith claim?

---

**3.** The amount of subrogation was correctly spelled out, but thereafter was mistakenly typed as $8,181.76 instead of $18,181.76.

## STANDARD OF REVIEW

Summary judgment is appropriate only when it is clear there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995). In ruling on a motion for summary judgment, the trial court must view the evidence and all inferences which can be reasonably drawn therefrom in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994).

## LAW/ANALYSIS

### 1. RIGHT TO EQUITABLE SUBROGATION

The Shumperts contend the circuit court erred in concluding Time was entitled to equitable subrogation after it failed to contractually include the right to subrogation in the health insurance policy as provided by section 38–71–190. They argue the doctrine of equitable subrogation, although invoked in the areas of property and casualty insurance, is not universally applied to health insurance policies and should not be permitted. We agree.

"Subrogation may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right." 73 Am.Jur.2d *Subrogation* § 1 (1974). The general rule is that when an insurer pays its insured for a loss resulting from the tortious conduct of a third party, the insurer is subrogated to the rights of its insured against the third party. *Frank B. Hall & Co. v. Bailey Lincoln–Mercury, Inc.,* 298 S.C. 282, 379 S.E.2d 892 (1989). Subrogation enables the insurer to recover the amount paid to its insured out of any judgment or settlement proceeds received by the insured from the third party.

Subrogation can arise by statute, by contract, or through equity. *Dailey v. Secura Ins. Co.,* 164 Wis.2d 624, 476 N.W.2d 299 (App.1991). Conventional subrogation arises by contract and is specifically bargained for by the parties. In contrast, equitable (or legal) subrogation is implied subrogation that arises under the common law.

> Legal subrogation is not dependent upon contract. The doctrine is an equitable one, founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in the light of the actions and relationship of the parties.

*Calvert Fire Ins. Co. v. James,* 236 S.C. 431, 435, 114 S.E.2d 832, 834 (1960).

■ The elements of the doctrine of equitable subrogation are (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. *United Carolina Bank v. Caroprop, Ltd.,* 316 S.C. 1, 446 S.E.2d 415 (1994).

■ Time argues the enactment of section 38–71–190 [4] permitting subrogation clauses to be included in contracts for health insurance did not abolish the availability of equitable subrogation arising under the common law. Time contends this Court has stated equitable subrogation is permissible in health insurance policies in *Provident Life and Accident Insurance Co. v. Driver,* 317 S.C. 471, 451 S.E.2d 924 (Ct.App. 1994).

In *Provident,* we held an insurer did not waive, and was not estopped from asserting, its right to subrogation due to the insurer's failure to respond to three letters from the insured's attorney and, further, laches did not bar the subrogation claim. Unlike the case now before us, the health insurance policy in *Provident* did contain a subrogation clause. In reviewing the equitable defenses of waiver, estoppel, and laches, we stated the general principle that subrogation is an

---

**4.** Section 38–71–190 provides in pertinent part: "Any policy or contract of accident and health insurance issued in this [s]tate may include provision for subrogation by the insurer to the insured's right of recovery against a liable third party for not more than the amount of insurance benefits that the insurer has paid previously in relation to the insured's injury by the liable third party."

equitable procedure arising independently of the contract. Contrary to Time's assertion, we do not consider *Provident* dispositive because the question directly before the Court did not concern the application of subrogation in the absence of a subrogation clause in the health insurance contract and we were not asked to rule on that issue.

Other jurisdictions specifically considering the question now before us have determined the principle of equitable subrogation should not be applied to health insurance policies. *E.g.*, *Schultz v. Gotlund*, 138 Ill.2d 171, 149 Ill.Dec. 282, 561 N.E.2d 652 (1990) (group health insurer had no common law or equitable right to subrogation in personal injury settlement between insured and tortfeasor; absent express subrogation clause in policy, insurer had no right to share in proceeds of settlement); *McCain Foods, Inc. v. Gerard*, 489 A.2d 503 (Me.1985) (insurer was not entitled to subrogation because it was primary obligor and required under its own contract to pay insured's medical expenses); *Frost v. Porter Leasing Corp.*, 386 Mass. 425, 436 N.E.2d 387 (1982) (group insurer which provided medical and hospital expense benefits to an insured did not have a right of subrogation in a recovery by the insured against a tortfeasor for personal injuries where the group policy contained no express provision entitling the insurer to subrogation rights); *Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis.2d 437, 360 N.W.2d 33 (1985) (hospitalization and physician's services coverage was in nature of investment insurance and absent express subrogation clause, insurer who paid benefits thereunder was not equitably subrogated to insured's claims). *See also* Allen E. Korpela, Annotation, *Right of "Blue Cross" or "Blue Shield," or Similar Hospital or Medical Service Organization, to be Subrogated to Certificate Holder's Claims Against Tortfeasor*, 73 A.L.R.3d 1140 (1976).

In *Frost*, 386 Mass. 425, 436 N.E.2d 387, the insured was injured in an automobile accident. Frost had medical expenses totaling $26,566.04, which were paid under his group health insurance. Frost filed a tort action against the at-fault driver alleging damages for medical expenses, pain and suffering, impaired earning capacity, and future medical expenses. His wife claimed damages for loss of consortium. The Frosts settled their claims for a lump-sum of $250,000, the limits of

the driver's insurance policy. The group health insurer intervened, seeking a share of the settlement proceeds up to the amount of medical expenses it had paid.

The Supreme Judicial Court of Massachusetts noted that the reason for implied subrogation in insurance contracts is to prevent an unwarranted windfall to the insured. Subrogation returns any excess to the insurer, which can then recycle it in the form of lower insurance costs. However, the court stated the right of implied subrogation does not arise automatically upon the payment of benefits under *any* contract of insurance; rather, the availability of subrogation generally depends on the type of coverage involved. Courts have readily implied the right to subrogation in policies covering property and casualty damage, but not the area of personal insurance. In the former, the insured's loss is generally liquidated and the tort recovery is usually comparable, if not identical, to the insurance coverage. Therefore, the actual loss, and the amount of any excess compensation from the combination of insurance proceeds and the tort recovery, can be determined with certainty. The court observed:

> If medical expenses are isolated from the other consequences of an accident, excess compensation of an insured accident victim may appear definite and quantifiable. However, when subrogation is based on broad principles of equity and efficiency, rather than on the contract of the parties, isolation of medical expenses is artificial, and the accident victim's position should be viewed as a whole. Subrogation played no part in the bargain between insurer and insured, and in this circumstance, the courts should not intervene to adjust the rights of the parties unless all the adverse consequences of the accident have been offset.

*Id.*, 436 N.E.2d at 390–91 (citations and footnotes omitted).

In *American Pioneer Life Insurance Co. v. Rogers*, 296 Ark. 254, 753 S.W.2d 530 (1988), the Arkansas Supreme Court found the reasoning of *Frost* persuasive and held that in the absence of a specific subrogation clause, a medical expense insurer has no right to share in the proceeds of an insured's settlement or recovery from a third-part tortfeasor. The court noted that many jurisdictions have readily implied the

doctrine of equitable subrogation in cases concerning property insurance.

However, recovery for medical insurance benefits and tort damages does not necessarily produce a windfall or duplicative recovery. Most always when there is tort recovery the consideration for payment by the tortfeasor includes loss of wages, loss of earning capacity, pain and suffering, permanent or temporary physical impairment, medical expenses, property damages and intangible losses which are not susceptible to exact measurement. The principles which cause us to recognize equitable subrogation in property disputes are not present in the field of medical expense payments for personal injuries.

*Id.* at 258–59, 753 S.W.2d 530.

Courts have distinguished cases involving subrogation in workers' compensation settings, where there is a statutory provision for it. *E.g., Schultz,* 138 Ill.2d 171, 149 Ill.Dec. 282, 561 N.E.2d 652. In *Schultz,* the Illinois Supreme Court noted that courts generally have not recognized implied rights of subrogation in the area of personal insurance, which includes policies for medical expense benefits as well as accident insurance. *Id.,* 149 Ill.Dec. at 283–84, 561 N.E.2d at 653–54.

Finally, some authorities have noted health insurers are primarily liable for the medical expenses they contract to provide to their insureds. *See McCain Foods,* 489 A.2d 503 (holding a group medical insurer was not entitled to equitable subrogation because it was the primary obligor and required under its own contract to pay the insured's medical expenses). *See also Michigan Hosp. Serv. v. Sharpe,* 339 Mich. 357, 63 N.W.2d 638 (1954) (holding the doctrine of equitable subrogation arises only in favor of those who pay the debt of another, and not in favor of one who pays the debt in performance of his own covenants; where hospital service organization furnished services to members injured in automobile accident and each received a settlement from the tortfeasor which included the hospital bill, hospital organization was not entitled under the common law and equitable principles of subrogation to recover from the members the sums received in settlement for hospital services).

We find the reasoning of these cases persuasive and conclude a *health insurer* which does not include a provision for subrogation in the insurance policy is not entitled to obtain subrogation through the alternative means of equitable subrogation.

## 2. AMOUNT OF SUBROGATION INTEREST

The Shumperts contend the trial judge erred in determining the amount of Time's subrogation interest. Our finding that Time was not entitled to equitable subrogation is dispositive of this issue. Therefore, we need not address it.

## 3. GRANTING OF SUMMARY JUDGMENT ON BAD FAITH CLAIM

The Shumperts contend the trial judge erred in granting summary judgment on their claim against Time for bad faith for its assertion of a claim for equitable subrogation. We disagree.

In the initial order dated December 19, 1996, the circuit court granted the motion for summary judgment by Time and denied the motion by the Shumperts. The court found Time was entitled to equitable subrogation in the amount of $18,-818.76. The court did not specifically mention the bad faith claims of either party.

Ordinarily, an issue not ruled upon must be brought to the attention of the trial judge by a timely motion to alter or amend the judgment.[5] However, since the circuit court found Time was entitled to equitable subrogation, as a necessary consequence, and implicit in the court's ruling, was the additional finding that Time did not exhibit bad faith in

---

[5] The court may consider a timely post-trial motion even if a notice of appeal has been filed. *Hudson v. Hudson*, 290 S.C. 215, 349 S.E.2d 341 (1986) (service and filing of notice of appeal before the filing of timely post-trial motions does not deprive the lower court of jurisdiction to consider the motions). The Shumperts' January 7, 1997 letter asking the judge to rule on the bad faith claims, even if construed as a motion to amend, came more than 10 days after the Shumperts received written notice of entry of the order on December 23, 1996. *See* Rule 52(b), SCRCP. The judge issued an amended order denying the Shumperts' claim for bad faith. However, in light of our holding that the issue was in fact ruled upon, the timeliness of the motion is immaterial.

asserting its claim. *Cf. In the Interest of Dave G.*, 324 S.C. 347, 477 S.E.2d 470 (Ct.App.1996) (affirming implicit finding in judge's order). Counsel for the parties likewise acknowledged at the hearing on the summary judgment motions that the court's decision as to whether Time was entitled to equitable subrogation would effectively decide the case.

■ Although we reverse the court's finding that Time was entitled to equitable subrogation, we hold the Shumperts' claim for bad faith is without merit. The issue of equitable subrogation was a matter Time was justified in litigating. Therefore, we cannot say Time was without just cause in asserting its claim or that it acted in bad faith. *See Strickland v. Prudential Ins. Co.*, 278 S.C. 82, 292 S.E.2d 301 (1982) (where insurance company was justified in litigating issue, it did not act in bad faith).

## CONCLUSION

For the foregoing reasons, we hold a *health insurer* which does not include a provision for subrogation in the accident and health policy is *not* entitled to subrogation. Accordingly, we reverse the circuit court's determination that Time was entitled to equitable subrogation, and we affirm its ruling that the Shumperts were not entitled to recover on their claim for bad faith.

**AFFIRMED IN PART, REVERSED IN PART.**

CONNOR and HUFF, JJ., concur.