[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10174
_____

D.C. Docket No. 1:16-cv-23520-UU

LARISSA PATEL,

Plaintiff – Counter Defendant –
Cross Claimant – Cross
Defendant – Appellant,

versus

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,
a New Jersey corporation, et al.,

Defendants – Third Party
Plaintiffs – Counter Claimants,

SIMMONS BANK,
f.k.a. First State Bank,

Third Party Defendant –
Cross Defendant – Appellee,

SIMMONS BANK,

Third Party Defendant – Cross
Defendant – Cross Claimant –
Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
———————————————

(December 18, 2018)

Before ED CARNES, Chief Judge, ROSENBAUM, and DUBINA, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's order granting summary judgment

to the Appellee, Simmons Bank, and against the Appellant, Larissa Patel

("Larissa" or "Plaintiff").  As found by the district court, the facts in this case are

undisputed; thus, we decide only questions of law.  After having the benefit of oral

argument, reading the parties' briefs, and reviewing the record, we affirm the

district court's order.

## I.    BACKGROUND

In March 2003, Plaintiff's father, Bansidhar Kalidas Patel ("Mr. Patel"),

purchased a $1,000,000 life insurance policy ("the Policy") from Pruco Life

Insurance Company ("Pruco").  The Policy named Plaintiff as sole beneficiary, and

it included two provisions permitting Mr. Patel to change the designated

beneficiaries or assign the policy.

2

Mr. Patel was the Member/Manager of the Aiken Hospitality Group, LLC ("AHG"). In July 2014, on behalf of AHG, Mr. Patel entered into a loan agreement with First State Bank of Tennessee for a secured $3,995,000 loan, which he personally guaranteed. The loan agreement lists as "Collateral" a mortgage and an assignment of the Policy, among other items. Simultaneous with signing the loan agreement, Mr. Patel signed a mortgage in favor of First State Bank. Two months later, Mr. Patel executed a collateral assignment of the Policy in favor of First State Bank (the "Assignment Agreement"). The Assignment Agreement gave First State Bank "the right to receive any Death Benefit as its . . . interest may appear." (R. Doc. 59, Ex. D, p. 64.) Toward the end of September 2014, Simmons Bank acquired First State Bank, thereby acquiring the loan and First State Bank's assignment rights. Simmons and AHG then executed a Change in Terms Agreement related to the loan that provides that the death of any member of AHG (that is, Mr. Patel) constitutes an "Event of Default," upon which the lender may declare the entire principal balance and accrued interest under the agreement immediately due. "[I]n addition to its option to declare the entire unpaid amount of the Note due and payable," the Bank could choose to "[a]pply the proceeds from any disposition of the Collateral to the satisfaction" of "[t]he

3

unpaid amount of any interest due on the Note" or "[t]he unpaid principal amounts of the Note." (*Id.* at pp. 41–42.)

On June 5, 2016, Mr. Patel died intestate while the Policy was still in effect. On August 12, Simmons Bank submitted a claim to Pruco for the Policy's full Death Benefit, but Plaintiff demanded that Pruco pay the full Death Benefit to her instead. Subsequently, Plaintiff filed a civil action in Florida district court against Prudential Life Insurance Company ("Prudential") to recover the Death Benefit. Prudential filed an answer and asserted a third-party complaint against Simmons Bank. Later, the parties entered into a written stipulation for the substitution of Pruco in place of Prudential because the Policy had been issued by Pruco. The district court granted the joint stipulation, substituted Pruco as the proper defendant, and dismissed Prudential from the case.

On September 23, 2016, Simmons Bank filed suit against Pruco in the Eastern District of Tennessee. The parties to the case in the Southern District of Florida filed a joint motion for entry of an agreed order of interpleader that preliminarily and permanently enjoined Simmons Bank from prosecuting the Tennessee state court action. The district court granted the joint motion and ordered Pruco to deposit the full Death Benefit in the court's registry. After the

4

district court received notification of the deposit of the Death Benefit, it dismissed with prejudice Pruco from this action.

Interestingly, in March 2017, the parties reached a settlement in this case that provided that the Death Benefit would be split $400,000 to Plaintiff and $600,000 to Simmons Bank.  The settlement was subject to approval by the Small Business Administration, which refused to approve any settlement that gave Simmons Bank less than the full Death Benefit amount.  Accordingly, the settlement collapsed, the district court reopened the case, and the parties filed cross-motions for summary judgment.  After the district court granted summary judgment in favor of Simmons Bank, Plaintiff perfected this appeal.[1]

## II. ISSUES

The district court defined the legal issues in this case as follows:

(1) Does Tennessee Code Annotated § 56-7-204, which governs assignments of life insurance policies, require payment of the full Death Benefit to Simmons Bank?

(2) If Simmons Bank is entitled to the full Death Benefit under Tennessee law, is Plaintiff equitably subrogated to Simmons Bank's secured

---

[1] At the time we heard oral argument in this case, the loan was not in default; Simmons Bank had not instituted a foreclosure action against AHG; and there was currently a balance due and owing on the loan.

5

position under Tennessee or South Carolina law, thereby becoming a co-mortgagee and secured creditor with Simmons Bank against AHG?

### III.    STANDARD OF REVIEW

We review a district court's order granting summary judgment de novo.  *See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1337 (11th Cir. 2009).  We also review de novo questions of law.  *See Muratore v. United States Office of Personnel Mgmt.*, 222 F.3d 918, 920 (11th Cir. 2000).

### IV.    ANALYSIS

### A.  **Assignment of Life Insurance Policy**

In her cross-claim against Simmons Bank, Plaintiff concedes that her count for recovery of the Death Benefit is governed by the substantive law of the State of Tennessee.  (R. Doc. 49, ¶ 14; Doc. 54, p. 5; Doc. 60.)  Thus, as did the district court, we apply Tennessee law.  Tennessee Code Annotated § 56-7-204 governs the assignment of life insurance policies as security for loans.  TENN. CODE ANN. § 56-7-204 (2008).  It states in relevant part:

> (a) Whenever the insured in a life insurance policy owned by the insured has reserved to the insured the right to change the beneficiary under the policy, the insured has the right to and may assign the policy, to the extent and in the manner permitted by the terms of the policy, as security for a loan, or for any other purpose, without the beneficiary joining in the assignment or assenting to the assignment, and the rights and interests of the beneficiary, including a spouse or child of the insured, in the

6

policy or its proceeds, shall be subject and subordinate to the rights and interests of the assignee as created and defined by the assignment.

\*\*\*

(b)(2) Any assignment permitted in this section, whether made before or after May 7, 1969, is valid for the purpose of vesting in the assignee all the rights and benefits assigned, and shall entitle the insurer to deal with the assignee as the owner of all rights and benefits conferred on the insured under the policy, in accordance with the terms of the assignment without prejudice to the insurer on account of any payment it may make or any individual policy it may issue arising from conversion prior to receipt at its home office of notice of the assignment.

(b)(3) This section acknowledges, declares and codifies the existing right of assignment of interests under life insurance policies.

*Id.* § 56-7-204(a), (b)(2) & (b)(3).

Simmons Bank argues that, pursuant to this statute and the terms of the Assignment Agreement, it became entitled to the full amount of the Death Benefit upon Mr. Patel's death. Plaintiff argues that, pursuant to several Tennessee judicial opinions (most issued prior to the enactment of § 56-7-204), Simmons Bank was required to declare that AHG was in default on the loan before it could recover the Death Benefit, and because Simmons Bank has not declared AHG in default, it is not entitled to the Death Benefit. Although no Tennessee court has interpreted this particular statute, we find guidance in Tennessee law on how to interpret statutes. In construing the applicable provisions of a statute, we construe

7

unambiguous statutes "to mean what they say." *State ex rel Earhart v. City of Bristol*, 970 S.W. 2d 948, 951 (Tenn. 1998) (citing *Montgomery v. Hoskins*, 432 S.W. 2d 654, 655 (1968)). We must also "ascertain and give effect to the legislative intent and the ordinary meaning of the language of the statutes." *Id.* Statutes are to be construed strictly, but not so strictly that the legislative intent is annulled. *State v. Netto*, 486 S.W. 2d 725, 728 (Tenn. 1972).

We conclude that this statute is unambiguous and construe its meaning plainly. Hence, we highlight three clear meanings from the statute:

> (1) An insured may assign a policy, without the assent of the beneficiary, in any manner provided by the terms of the policy (subsection (a));
>
> (2) The beneficiary's rights and interests are thereby subordinated to the rights and interests of the assignee (subsection (a)); and
>
> (3) The assignee is vested with all rights and benefits assigned, and the insurer may deal with the assignee as the owner of all such rights and benefits (subsection (b)(2)).

Applying the plain meaning of the statute to the Policy, we conclude that it supports Simmons Bank's position. The record clearly demonstrates that Mr. Patel assigned the Policy to First State Bank, and such assignment was permitted. As the beneficiary of the Policy, Plaintiff's rights and interests were thereby subordinated to First State Bank's rights and interests. The Assignment Agreement conferred on First State Bank the right to receive any Death Benefit. A

8

natural reading and straightforward application of the statute, therefore, yields the result that Simmons Bank, as First State Bank's predecessor in interest, is entitled to receive the Death Benefit.

We reject Plaintiff's contention that Simmons Bank has to first declare that AHG defaulted on the loan before Simmons Bank can recover the Death Benefit proceeds. Plaintiff relies primarily on *Third National Bank v. Hall*, 209 S.W.2d 46 (Tenn. Ct. App. 1947), to support its contention. *Third National Bank* was decided fourteen years prior to the enactment of the statute at issue. Additionally, the case does not establish any requirement that a creditor declare default before it is entitled to the proceeds on an assigned life insurance policy. Thus, we agree with the district court that neither *Third National Bank*, nor any other case cited by the Plaintiff, supports its argument that Simmons Bank must declare AHG in default before it can obtain the Death Benefit. Accordingly, we conclude that the district court correctly determined that Simmons Bank is entitled to the Death Benefit proceeds from the Policy.

## B. Equitable Subrogation Claim

Plaintiff asserts an equitable subrogation claim in a cross-claim against Simmons Bank. Specifically, she argues that if we decide Simmons Bank is entitled to the full Death Benefit, then she is subrogated in the amount of the Death Benefit

9

to Simmons Bank's secured position, thereby becoming a co-mortgagee and a co-secured creditor. According to the Plaintiff, she would become approximately a 25% owner of AHG's loan.

Plaintiff assumes without explanation that South Carolina law applies. Simmons Bank responds that the parties stipulated that Tennessee law governs this entire action. While the record does demonstrate that the parties stipulated that Tennessee law governs the first issue in this case, the record does not clearly reveal any agreement as to choice of law concerning the equitable subrogation issue. *See* Doc. 80, Plaintiff's Third Motion for Summary Judgment (asserting for first time that South Carolina law applies to the subrogation claim). Regardless of which state law applies, we conclude Plaintiff cannot succeed on her equitable subrogation claim.

Both Tennessee and South Carolina law generally recognize a cause of action for equitable subrogation. *See generally Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 579 (Tenn. 2003) (subrogation is a "creature of equity"); *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) (subrogation allows an insurer to assert the rights the insured had against a third party); *Shumpert v. Time Ins. Co.,* 496 S.E.2d 653, 656 (S.C. Ct. App. 1998) (the elements of the doctrine of equitable subrogation are that the party claiming subrogation has paid the debt; the party had

10

a direct interest in the discharge of the debt or lien; the party was secondarily liable for the debt or for the discharge of the lien; and no injustice will be done to the other party by the allowance of the equity). "Subrogation may be broadly defined as the substitution of one person in place of another with reference to a lawful claim or right." *Shumpert*, 496 S.E.2d at 656 (quoting 73 Am.Jur.2d *Subrogation* § 1 (1974)). "Subrogation is defined as 'the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.'" *Bankers Trust*, 124 S.W.3d at 579 (quoting *Blankenship*, 5 S.W.3d at 650).

The purpose behind the doctrine of equitable subrogation is to make a party who paid the debt whole and ensure that another party does not obtain a double recovery or windfall. "The rationale to employ equitable subrogation is to prevent unjust enrichment." *Bankers Trust*, 124 S.W.3d at 580. In the context of a life insurance policy used as a security for a loan, the right of subrogation depends on the insured's intent. *Falk v. Vreeland Trading Corp.,* 325 S.E.2d 333, 335 (S.C. Ct. App. 1985). If it appears that the insured intended the policy to be used as the primary fund to pay off the debt, then the beneficiary is not entitled to subrogation. *Id.* We conclude the same is true under Tennessee law, though no case expressly so holds. The "lack of explicit [Tennessee] case law on an issue does not absolve

11

us of our duty to decide what the state courts would hold if faced with it." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005). Instead, we must "predict" how "the highest court [of Tennessee] would decide this case." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Guideone*, 420 F.3d at 1326 n.5). And since every other jurisdiction to have addressed the issue asks whether the insured intended the beneficiary of a policy to be equitably subrogated to the assignee's interest in these circumstances, we conclude Tennessee surely would as well.

The cases Plaintiff relies on to support her equitable subrogation claim are all distinguishable. In each of the cases cited by Plaintiff, the court had before it evidence that the decedent intended for the beneficiary to receive the death benefits irrespective of the assignment of policy proceeds. No such evidence exists in the record here. In fact, the only evidence in the record here shows that Mr. Patel assigned the life insurance policy to First State Bank as collateral for AHG's loan. Pursuant to the Assignment Agreement, First State Bank "will have the right to receive any Death Benefit as its . . . interest may appear." (R. Doc. 59, Ex. D, p. 64.) There is simply no evidence in the record tending to show that Mr. Patel nonetheless intended Plaintiff to receive the Death Benefit proceeds. Accordingly, we hold Plaintiff is not entitled to equitable subrogation.

12

This is indeed a sad and unfortunate case for the Plaintiff. Nevertheless, our review of the record persuades us that Mr. Patel's intent was crystal clear that the bank was entitled to receive the Death Benefit proceeds. Accordingly, for the foregoing reasons, we affirm the district court's order granting summary judgment for Simmons Bank.

AFFIRMED.