FRANK F. FROST & another; THE UNION LABOR LIFE
INSURANCE COMPANY, intervener, vs. PORTER LEASING CORP.
& another.

Middlesex.  February 4, 1982. — June 3, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Subrogation.  Insurance,* Subrogation, Health insurance.

In the absence of a provision for subrogation in the applicable insurance
   policy, an insurer providing medical and hospital insurance is not enti-
   tled to subrogation as to amounts paid or payable by a tortfeasor to the
   insured.  [427-432] WILKINS, J., concurring.

CIVIL ACTION commenced in the Superior Court on July 14,
1976.

The case was reported to the Appeals Court by *Morse,* J.

The Supreme Judicial Court granted a request for direct
review.

*Neil Sugarman* (*Dennis Paul Phillips* with him) for the
plaintiff.

*Edward S. Rooney* (*William F. Kennedy, Jr.,* with him)
for the intervener.

HENNESSEY, C.J.   A Superior Court judge has reported
the question "[w]hether a group insurer which provides
medical and hospital expenses benefits to an insured has a
right of subrogation in a recovery by the insured against a
tortfeasor for personal injuries even though the group insur-
ance policy contains no express provision entitling the insur-
er to subrogation rights."  We conclude that the insurer has
no right, in the absence of a subrogation clause, to share in
the insured's recovery against the tortfeasor.

Frank F. Frost was injured in a motor vehicle accident.
At the time, he was a beneficiary of a group insurance policy
issued to a union health plan and paid for by his employer.
Frost submitted medical expense claims totaling $26,566.04,

and the insurer, The Union Labor Life Insurance Company (Union Labor), paid benefits of $22,679.57.[1]

The present case began as a tort action by Frost and his wife, Rilla Frost, against the owner and driver of the other vehicle involved in the accident. Frank Frost claimed damages for the medical expenses he had incurred, as well as for pain and suffering, impaired earning capacity, and future medical expenses. Rilla Frost claimed damages for loss of consortium.

Union Labor intervened in the Frosts' action, asserting a right of subrogation. Specifically, it claimed that, to the extent of the benefits it had paid to Frost, it was entitled to any damages Frost might recover from the defendants for medical expenses. Union Labor did not assert any claims directly against the tortfeasors.

Subsequently, the Frosts negotiated a settlement with the owner and driver of the other car. Frank Frost demanded $500,000, and Rilla $100,000. The parties agreed to a lump-sum settlement of $250,000, the limit of the defendants' liability insurance policy. The case was dismissed as against the defendants, leaving the Frosts and Union Labor to dispute over the proceeds of the settlement.[2] The judge then allowed the parties' motion for a report to the Appeals Court, see Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and entered a memorandum of decision, in which he concluded that Union Labor enjoyed a right of subrogation in the proceeds to the extent of the benefits it had paid, less a share of the costs the Frosts had incurred in obtaining a settlement. We granted the Frosts' application for direct appellate review.

Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to re-

---

[1] The difference between Frost's claims and Union Labor's payments reflects a $2,000 deduction for no-fault benefits Frost received under a separate policy, and a $1,886.47 deduction according to limitations in the group insurance policy. Frost does not claim that the $2,000 deduction for no-fault benefits was improper.

[2] $25,000 was placed in escrow pending decision on Union Labor's claim.

cover from two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor or loss victim, called the subrogor) against the third, primarily responsible party. See *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238, 240-241 (1970); 1 G.E. Palmer, Restitution § 1.5(b) (1978). The doctrine of subrogation applies, within limits to be discussed shortly, to payments under policies of insurance. Upon payment, the insurer is entitled to share the benefit of any rights of recovery the insured may have against a tortfeasor for the same loss covered by the insurance. See *Travelers Ins. Co.* v. *Graye, supra* at 241; *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 363-364 (1944). See generally 16 G. Couch, Insurance c. 61 (2d ed. 1966 & Supp. 1981). If the insured recovers from the tortfeasor, the insurer's right becomes a right to the proceeds in the hands of the insured.[3] *Travelers Ins. Co.* v. *Graye, supra. General Exch. Ins. Corp.* v. *Driscoll, supra* at 364. See generally 16 G. Couch, *supra* § 61:29; Annot., 51 A.L.R.2d 697 (1957).

An insurer's right of subrogation may be reserved in an agreement between the insurer and the insured, e.g., *General Exch. Ins. Corp.* v. *Driscoll, supra*, or may arise by implication, as a matter of general law, e.g., *Travelers Ins. Co.* v. *Graye, supra* at 240-241. See generally 16 G. Couch, *supra* § 61:2.[4] Here, Union Labor admits that Frost's insurance policy contained no provision for subrogation. Union Labor's claim is one of implied subrogation, and we express no opinion on the ability of parties to fix their rights by contract. See Kimball & Davis, The Extension of Insurance Subrogation, 60 Mich. L. Rev. 841, 860-868 (1962). Cf. *Morin* v. *Massachusetts Blue Cross, Inc.*, 365 Mass. 379, 383-390 (1974).

---

[3] If the tortfeasor has settled with the insured, with knowledge of the insurer's claim, some courts have permitted the insurer to proceed against the tortfeasor. See Annot., 92 A.L.R.2d 102 (1963).

[4] In addition, statutes may provide for subrogation. E.g., G. L. c. 152, § 15. See *Brown* v. *Leighton*, 385 Mass. 757 (1982).

The reason for implied subrogation under contracts of insurance is to prevent an unwarranted windfall to the insured. See *Travelers Ins. Co.* v. *Graye, supra;* 4 G.E. Palmer, *supra* § 23.1. If the insured recovers from both the insurer and the tortfeasor, his compensation may exceed his actual loss. Duplicative recovery is "a result which the law has never looked upon with favor." *Travelers Ins. Co.* v. *Graye, supra* at 241. It is contrary to the indemnity purposes that underlie many insurance contracts, and produces a form of unjust enrichment. *Id.* at 240-241. 4 G.E. Palmer, *supra.* Further, duplicative recoveries by particular accident victims cause an inefficient distribution of the overall resources available for accident compensation. Subrogation returns any excess to the insurer, who can then recycle it in the form of lower insurance costs. See Fleming, The Collateral Source Rule and Loss Allocation in Tort Law, 54 Calif. L. Rev. 1478, 1481-1484 (1966).

Nevertheless, rights of subrogation do not arise automatically upon payment of benefits under any contract of insurance. The availability of subrogation has generally depended on the type of coverage involved. Courts have readily implied rights of subrogation under policies covering property damage. *Travelers Ins. Co.* v. *Graye, supra.* See generally 3 J.A. Applebaum & J. Applebaum, Insurance Law and Practice § 1675, at 495 (1967 & Supp. 1981); 16 G. Couch, Insurance §§ 61:233, 61:242, 61:247, 61:332, 61:428 (2d ed. 1961 & Supp. 1981); 4 G.E. Palmer, *supra* § 23.13. The insurer's obligation under a policy of property insurance is viewed only as a duty to indemnify the insured for actual loss, and not as an absolute liability to pay a certain sum of money upon the happening of an event. See, e.g., *Travelers Ins. Co.* v. *Graye, supra* at 240; *Gatzweiler* v. *Milwaukee Elec. Ry. & Light Co.*, 136 Wis. 34, 36-37 (1908); 16 G. Couch, *supra* § 61:8. Moreover, the insured's loss is generally liquidated, and tort recovery is comparable, if not identical, to insurance coverage. See *Aetna Life Ins. Co.* v. *J.B. Parker & Co.*, 30 Tex. Civ. App. 521, 523 (1902), aff'd, 96 Tex. 287 (1903). Therefore, the insured's

actual loss, and the amount of any excess compensation from the combination of insurance proceeds and tort recovery, can be determined with certainty.

On the other hand, courts have not recognized implied rights of subrogation in the area of "personal insurance," a category that has included medical expense benefits as well as life insurance and other forms of accident insurance. E.g., *Publix Cab Co.* v. *Colorado Nat'l Bank*, 139 Colo. 205, 228-229 (1959); *Michigan Hosp. Serv.* v. *Sharpe*, 339 Mich. 357, 369-373 (1954); *Feaster* v. *Old Security Life Ins. Co.*, 87 N.J. Super. 339, 348-349 (1965), aff'd, 91 N.J. Super. 120 (1966); *Aetna Life Ins. Co.* v. *J.B. Parker & Co.*, 30 Tex. Civ. App. 521, 523 (1902); *Gatzweiler* v. *Milwaukee Elec. Ry. & Light Co.*, 136 Wis. 34, 37-39 (1908); *Rixman* v. *Somerset Pub. Schools*, 83 Wis. 2d 571 (1978). See 16 G. Couch, *supra* § 61:9; 4 G.E. Palmer, *supra* § 23.17(b); Kimball & Davis, *supra* at 849-851. Personal insurance is said to be less a contract of indemnity than a form of investment, imposing on the insurer an absolute duty to pay if the named condition occurs. E.g., *Publix Cab Co.* v. *Colorado Nat'l Bank, supra* at 228; *Feaster* v. *Old Security Life Ins. Co., supra* at 348; *Gatzweiler* v. *Milwaukee Elec. Ry. & Light Co., supra* at 37. But see *Matter of Maak*, 30 Misc. 2d 610, 612 (N.Y. Sup. Ct. 1961). Further the insured's receipt of both tort damages and insurance benefits may not produce a measurably duplicative recovery. The insured is likely to have suffered intangible losses that are insusceptible to precise measurement, and the two sources of his recovery may cover different ranges of loss and be differently affected by considerations such as fault. *Feaster* v. *Old Security Life Ins. Co., supra. Aetna Life Ins. Co.* v. *J.B. Parker & Co., supra. Gatzweiler* v. *Milwaukee Elec. Ry. & Light Co., supra.* 4 G.E. Palmer, *supra* § 23.16, at 441.

Commentators have objected to the courts' classification of medical expense policies with other forms of personal insurance, and have argued that subrogation rights should be implied upon payment of benefits for medical and hospital expenses. They point out that medical coverage, like prop-

erty insurance, is designed to indemnify the insured for quantifiable economic losses, and bears little similarity to an investment. Fleming, *supra* at 1501-1502. Kimball & Davis, *supra* at 851-860.

Although we recognize the indemnity character of medical and hospital expense benefits, we do not feel that the principles that support subrogation under policies of property insurance would be served by extending implied rights of subrogation into the field of insurance for personal injuries. Subrogation rights, as we have said, are implied to prevent unwarranted compensation and to facilitate sound distribution of compensation resources. If medical expenses are isolated from the other consequences of an accident, excess compensation of an insured accident victim may appear definite and quantifiable. However, when subrogation is based on broad principles of equity and efficiency, rather than on the contract of the parties, isolation of medical expenses is artificial, and the accident victim's position should be viewed as a whole. 4 G.E. Palmer, *supra* § 23.16, at 444. Subrogation played no part in the bargain between insurer and insured,[5] and in this circumstance, the courts should not intervene to adjust the rights of the parties unless all the adverse consequences of the accident have been offset. See *Morin* v. *Massachusetts Blue Cross, Inc.*, 365 Mass. 379, 390 (1974).

When the insured's losses are viewed in their entirety, duplicative compensation is both uncertain and unlikely. 4 G.E. Palmer, *supra* § 23.16. The insured may be faced with property damage, pain and suffering, and diminished earning capacity, in addition to medical bills. The costs of litigation, or the decision to settle, may reduce his over-all recovery. Yet the insured's implied right of subrogation

---

[5] Union Labor points out that the premiums for Frost's policy were paid by Frost's employer rather than by Frost himself. The fact that the benefits do not flow to the party who has paid premiums, however, should not detract from the force of legitimate expectations, both of the beneficiary and of the one who has paid. This is particularly true when, as here, the policy is an employment benefit, bargained for by the insured's union.

must be limited to excessive recovery if it is to conform to the purposes that justify it. Further, when the insured has not agreed to subrogation, doubt should be resolved in his favor. *Id.* § 23.15, at 440.

Perhaps a formula could be devised by which subrogation could be confined to recapture of duplicative compensation. The insurer might, for example, be permitted to recover if it could demonstrate that the insured's net recovery (insurance proceeds and tort recovery, less costs of collection) exceeded fair compensation for the insured's losses. See, e.g., *Ortiz* v. *Great Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343-344 (Tex. 1980); *Thiringer* v. *American Motors Ins. Co.*, 91 Wash. 2d 215, 219-222 (1978); *Garrity* v. *Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541-543 (1977). However, the costs of implementing the formula could well undercut its justifications, particularly when, as here, the insured had reached a lump-sum settlement with the tortfeasor. See, e.g., *Ortiz* v. *Great Fire & Cas. Ins. Co.*, *supra* at 344. If the inquiry covered the insured's over-all loss from the accident — as in fairness it should — determination of the extent of excess recovery could be equally as complex as the personal injury trial the original parties sought to avoid by settlement. See *Thiringer* v. *American Motors Ins. Co.*, *supra* at 222; 4 G.E. Palmer, *supra* § 23.16, at 444. Thus, litigation over subrogation would impose additional burdens on the insured, and cut into his over-all compensation for injury. Moreover, this added step in the adjustment of rights would detract from any generalized benefits that subrogation might bring to the sound use and distribution of resources available to compensate loss. Much of the "windfall" produced by overlapping coverage would be absorbed by the costs of dividing it, rather than recycled to reduce the costs of insurance. See Walsh, Subrogation Under Uninsured Motorists Insurance, 10 B.C. Indus. & Com. L. Rev. 77, 79-80 (1968).

For these reasons, we conclude that, in the absence of a subrogation agreement between the insurer and the insured, an insurer that has paid medical or hospital expense

benefits has no right to share in the proceeds of the insured's recovery against a tortfeasor. Accordingly, we answer the reported question in the negative.

*So ordered.*

WILKINS, J. (concurring). I agree with the conclusion of the court that, in the absence of a provision for subrogation in the applicable insurance policy, an insurer providing health insurance is not entitled to subrogation as to amounts paid or payable by a tortfeasor to the insured. I do not reach this result because of the asserted problems of administration of such a system of subrogation to which the court makes reference. The problems are manageable, and most are not substantial. I reach my conclusion on the ground that, in fairness to an insured, a policy should disclose the possibility of subrogation claims. A person or group purchasing coverage for medical costs should know the limitations of such coverage, and, as a realistic matter, a lay person cannot be expected to have knowledge of a common law right of subrogation.

I reject the implications of the opinion that subrogation presents substantial problems with respect to insurance payments made for medical expenses incurred as the result of injuries caused by a third party wrongdoer. The amount of the insured's loss, the insurer's payment, and the tort recovery are known with certainty. *Supra* at 425-426. The subrogated insurer should acknowledge a proportionate reduction in its claim to reflect the services and expenses of the claimant's attorney in collecting on the tort claim. If the claim is settled, as most are, the subrogated insurer should accept a proportionate and reasonable reduction in its subrogation claim to reflect the discount that the claimant accepted in order to obtain a settlement. Assuming prompt assertion of the subrogation claim, the amount to be paid to the insurer on its subrogation claim can be readily determined in most cases as part of the settlement process.

   Subrogation is a reasonable method of assisting in holding down the costs of health insurance. It prevents an unde- served windfall to the insured. It is appropriate to consider the matter of medical expenses apart from other aspects of the injured person's claim. Whatever uncertainty may exist with respect to other elements of damages, the amount paid under the medical insurance policy can be ascertained and dealt with independently. I see no justification for denying subrogation, as the court seems to suggest, because, in settl- ing a case, the claimant may not have been made whole on all elements of his damages. The claimant can be and is made whole on his medical costs, to the extent of his coverage. A health insurer should not be obliged to forbear asserting subrogation rights in order to assist in making the claimant whole on some other aspect of his damages, such as lost wages and pain and suffering, for which the insured has not purchased coverage from the health insurer.