RIDGE TOOL COMPANY ET AL., APPELLANTS, *v.* SILVA ET AL., APPELLEES.

(No. 3936 — Decided July 30, 1986.)

*James N. Taylor,* for appellants.
*Patrick D. Riley,* for appellees.

*Per Curiam.* Plaintiffs-appellants, Ridge Tool Company ("Ridge") and its parent company, the Emerson Electric Company, appeal the trial court's order granting summary judgment in favor of defendants-appellees, Kenneth M. Silva and Diann Harlan.

Diann Harlan, formerly Diann Silva, was an employee of appellant Ridge. Diann was covered under a medical benefits plan set up and administered by appellants. Sometime in 1982 Kenneth Silva suffered injuries allegedly caused by the malpractice of a local chiropractor. During the years 1982 to 1983 appellants paid a portion of the medical expenses Kenneth incurred in the treatment of his injuries. This totalled $9,699.

Diann and Kenneth eventually entered into settlement negotiations

with the chiropractor and his insurance company. Before any settlement was made, Ridge notified appellees, the doctor, and the doctor's insurance carrier that Ridge was claiming a right of subrogation for the medical expenses already paid on behalf of appellees.

Appellees ultimately agreed to settle their claim against the chiropractor for $23,000. From this sum appellees must pay $7,666.67 in attorney fees plus all medical expenses not covered by the company insurance plan. At the insistence of the chiropractor, a portion of the settlement monies, equal to appellants' subrogation claim, was escrowed. Appellants and appellees agreed to resolve their dispute over the funds in escrow without involving the chiropractor.

Appellants thereafter filed a complaint in the trial court claiming an equitable right of subrogation to the funds deposited in escrow. Each party filed a motion for summary judgment. It is undisputed that because of the uncertainties and expenses of litigation it was a "fair settlement," but, if appellants' claim is allowed, appellees will not be "fully compensated." The trial court found in favor of appellees and granted their motion for summary judgment. We affirm.

Both assignments of error assert the same legal and factual argument and thus will be addressed together:

## Assignments of Error

"I. The court erred in granting the motion of defendants-appellees for summary judgment.

"II. The court erred in not granting the motion of plaintiffs-appellants for summary judgment."

The appellants concede that the medical expense benefit plan under which they paid Kenneth's hospital expenses contained no subrogation clause. Appellants' claim rests entirely on the theory of equitable subrogation.

Equitable subrogation exists by operation of law. It is to be distinguished from conventional subrogation which arises by virtue of the contract between the parties or by statute. 44 American Jurisprudence 2d (1982) 782, Insurance, Section 1794.

The applicability of the doctrine of equitable subrogation is dependent upon the type of insurance coverage involved. Where the insurance contract is one of indemnity, courts generally hold the doctrine applicable and allow the insurer to be subrogated to the proceeds received by the insured from the tortfeasor which exceed the amount of the insured's actual loss. See, generally, 16 Couch, Insurance 2d (Rev. Ed. 1983) 61, 74 et seq., Chapter 61. However, where the contract of insurance is non-indemnity, such as life, automobile, or hospitalization, equitable subrogation has been rejected. Id.; Cunningham v. Metropolitan Life Ins. Co. (1985), 121 Wis. 2d 437, 360 N.W. 2d 33; McCain Foods, Inc. v. Gerard (Me. 1985), 489 A. 2d 503; Frost v. Porter Leasing Corp. (1982), 386 Mass. 425, 436 N.E. 2d 387; Michigan Hosp. Serv. v. Sharpe (1954), 339 Mich. 357, 63 N.W. 2d 638; Annotation (1976), 73 A.L.R. 3d 1140.

A major reason advanced for non-application of equitable subrogation to medical insurance cases is the difficulty in determining when there has been full compensation. Equitable subrogation is essentially a theory of unjust enrichment. Where the amount received by the insured from the tortfeasor clearly exceeds the amount of his loss, he is being unjustly enriched by the excess. Allowing subrogation by the insurer prevents any double recovery by the insured.

Where property (indemnity) insurance is concerned, the amount of the insured's property loss is readily ascertainable. However, damages involving personal injuries are non-

pecuniary and incapable of calculation. *Frost, supra.* They include such things as pain and suffering, loss of consortium, and mental anguish. Because the amount of the insured's damage is inexact in a personal injury case, it is virtually impossible to determine if there has been a double recovery. Thus, the doctrine of equitable subrogation is inappropriate.

Other reasons advanced for not allowing equitable subrogation in medical insurance cases include the excess litigation created by such claims, the financial burden on the insured in fighting such claims, and the burden on the courts in administrating equitable subrogation litigation. *Frost, supra,* at 391.

Finally, if an insurance company wants to be subrogated to the rights of its insured, it need only incorporate a subrogation clause into the medical insurance contract. This is the modern trend and has been working satisfactorily. Such clauses have been held valid and enforceable with respect to medical payments. *Smith* v. *Travelers Ins. Co.* (1977), 50 Ohio St. 2d 43, 4 O.O. 3d 114, 362 N.E. 2d 264. Accordingly, appellants' assignments of error are overruled, and the trial court's order of summary judgment in favor of appellees is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.

GEORGE, J., dissents.

QUILLIN, P.J., concurring. When the pertinent cases are read, it is apparent to me that, on whatever theoretical basis, the courts are saying that personal injury subrogation is a square peg that does not fit into the round hole of equitable subrogation.

How can it ever be said that mere money ever fully compensates one for blindness, loss of limb, paralysis, etc. Who among us would trade the use of his limbs for any sum of money? Not I.

GEORGE, J., dissenting. While it is true that the trend in the law has been to deny the application of equitable subrogation, that position has been severely criticized. Kimball & Davis, The Extension of Insurance Subrogation (1962), 60 Mich. L. Rev. 841; Fleming, The Collateral Source Rule and Loss Allocation in Tort Law (1966), 54 Cal. L. Rev. 1478. The commentators argue that medical insurance is designed to compensate the insured only for his actual medical losses and that such insurance is more analogous to a contract of indemnity than one of investment. Kimball & Davis, *supra,* at 849-860; Fleming, *supra,* at 1501-1502. Thus, the distinction between indemnity and investment contracts for the purposes of determining whether equitable subrogation is available is tenuous at best.

The doctrine of equitable subrogation is designed to prevent duplicative recovery constituting unjust enrichment. IV Palmer, Law of Restitution (1978) 448, Section 23.17. Equitable subrogation also helps keep insurance premiums in check by recycling recaptured funds among policy holders. Fleming, *supra,* at 1481-1484. Finally, equitable subrogation places the ultimate loss on the wrongdoer, the party who is primarily responsible for the loss. 3 Appleman, Insurance Law and Practice (1967) 495, Section 1675. Such a beneficial and salutary doctrine should not be denied recognition for the reasons given by the majority.

The interplay of the doctrine of equitable subrogation with the collateral source rule must figure into any argument concerning the former's application. In Ohio, as in many other

states, the collateral source rule precludes a tortfeasor from introducing evidence of medical insurance benefits received by the plaintiff for his injuries. The rule prevents the tortfeasor from reducing plaintiff's damages by the amount of medical insurance benefits the plaintiff has already received. The rule's operation increases the likelihood that a plaintiff will reap a double recovery for some portion of his injuries. Not only will he receive a damage award designed to compensate him for his medical expenses, but also insurance proceeds paying those expenses.

The application of the doctrine of equitable subrogation to personal injury cases provides a method of eliminating double recovery which is likely to result from the application of the collateral source rule. So long as the collateral source rule is available to plaintiffs in personal injury cases, so, too, should the doctrine of equitable subrogation be available.

Many personal injury claims are liquidated and ascertainable. The amount of the insured's loss, the insurer's payment, and the tort recovery are known with relative certainty in most instances. Certainly a formula could be devised which would guarantee that the insured is fully compensated for his losses while ensuring that any double recovery is recaptured and redistributed among the policy-holders in the form of lower premiums. Fleming, *supra*. This would be the fairest result.

I believe that the instant case presents a genuine issue of fact as to whether appellees obtained a double recovery. Therefore, I would reverse and remand for a determination as to the extent of the appellees' loss. If the trial court determines that appellees were not adequately compensated, or not at all overcompensated for their loss, it should deny the equitable subrogation claim. If, however, the court determines that there was an excess recovery, it should allow satisfaction of the appellants' claim.

Therefore, I would remand the cause for the trial court's further consideration.