Gants, J.
On December 27, 1999, the plaintiff, United States Fire Insurance Company (“U.S. Fire”), paid $1,750,000 in settlement of insurance claims that arose from a civil suit brought by a condominium trust against parties insured by U.S. Fire. On December 11, 2000, U.S. Fire brought this action against the defendant Peerless Insurance Company (“Peerless”), seeking through a variety of theories to require Peerless to contribute towards the amount paid in settlement because Peerless, too, allegedly provided coverage on these claims to U.S. Fire’s insureds. Peerless has moved to dismiss the complaint. After hearing, Peerless’s motion to dismiss is ALLOWED as to Count I and DENIED as to Counts II through V.
BACKGROUND
According to the allegations in U.S. Fire’s complaint, which this Court must accept as true for purposes of this motion to dismiss, both U.S. Fire and Peerless are corporations involved in the business of selling and providing liability insurance. U.S. Fire insured Treadway Development Corporation (“TDC”) and Donald E. Burke (“Burke”) under an Owner’s and Contractor’s Protective Liability Policy that was effective from July 24, 1984 to July 24, 1985, and an Umbrella Policy that was effective from April 28, 1984 to April 28, 1985. Peerless also insured TDC and Burke through several Umbrella Policies issued to Harry E. Burke & Sons, Inc. that were effective from April 26, 1985 to April 28, 1988. Moreover, Peerless insured TDC and Burke under several primary comprehensive general liability policies that Peerless issued to Harry E. Burke & Sons, Inc., effective from February 28, 1985 to April 28, 1988.
On July 31, 1991, Treadway Brook Estates Condominium Trust and its Trustees (collectively, “the Condominium Trust”) commenced a negligence action in Middlesex County Superior Court (Civil Action No. 91-4536) against TDC and Burke for negligence, breach of warranty, and other claims arising out of TDC’s and Burke’s development, construction, and *122 marketing of the Treadway Brook Estates Condominiums (“the negligence action”). In or about June 1992, TDC and Burke made a demand on U.S. Fire for defense and indemnity in the negligence action. On or about January 15, 1993, U.S. Fire disclaimed TDC and Burke’s demand for defense and indemnity, insisting that the damages alleged in the negligence action arose from conduct that occurred after its coverage had expired. On June 11, 1993, TDC and Burke made a demand on Peerless for defense and indemnity in the negligence action. Peerless never responded to this demand, effectively disclaiming it. On November 16, 1995, the jury in the negligence action found in favor of the Condominium Trust and awarded damages against TDC and Burke in the amount of $1,500,000.00. On March 7, 1996, judgment entered against TDC and Burke, jointly and severally, in the amount of $2,359,586.60, including interest and costs.
On or about January 22, 1997, the Condominium Trust brought a second civil action in Middlesex County Superior Court, this time against U.S. Fire, asking the court to declare that U.S. Fire provided coverage to TDC and Burke for the damages awarded in the negligence action, and seeking to reach and apply those obligations to pay the judgment (“the reach and apply action”).[1] The Condominium Trust in the reach and apply action also sought to recover treble damages against U.S. Fire under G.L.c. 93A and c. 176D for U.S. Fire’s alleged bad faith disclaimer of coverage. On December 15, 1999, U.S. Fire agreed to pay $1,750, 000 to the Condominium Trust to settle the reach and apply action. As part of that settlement, the parties executed a Mutual General Release under which the Condominium Trust agreed “reasonably to cooperate with U.S. Fire in connection with any future attempts on the part of U.S. Fire to pursue claims for contribution against any other insurance carrier or third-party that U.S. Fire reasonably believes may be responsible for any or all of the amounts paid by U.S. Fire in settlement of the [reach and apply action].”
U.S. Fire commenced the present action on December 11, 2000. In the five counts in the complaint, U.S. Fire essentially presents three distinct theories under which it seeks damages from Peerless. First, U.S. Fire seeks statutory contribution under G.L.c. 231B from Peerless, claiming that Peerless was a joint tortfeasor in the reach and apply action and that U.S. Fire made a reasonable settlement of $ 1.75 million that exceeded its pro rata share of common liability (Count I). Second, U.S. Fire claims that, through its settlement of the reach and apply action, it has become subrogated to the rights that TDC and Burke have against Peerless, and, standing in their shoes, sues Peerless for its alleged breach of contract and bad faith disclaimer of coverage (Counts III, IV, and V). Third, U.S. Fire seeks equitable contribution from Peerless for its fair share of the amount paid by U.S. Fire to defend and indemnify TDC and Burke in the negligence action (Count II). Peerless, under Mass.R.Civ.P. 12(b)(6), contends that U.S. Fire has failed to state a claim under all three theories and therefore seeks dismissal of the complaint. This Court will address each theory in turn.
DISCUSSION
Count I: Contribution under G.L.c. 23IB
Under G.L.c. 231B, which governs the statutory right of contribution, there is a right of contribution “where two or more persons become jointly liable in tort for the same injury to person or property.” G.L.c. 23 IB, §l(a). “The right of contribution shall exist only in favor of a joint tortfeasor . . . who has paid more than his pro rata share of the common liability ..." G.L.c. 231B, § 1(b). “A liability insurer, who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, shall be subrogated to the tortfeasor’s right of contribution to the extent of the amount it has paid in excess of the tortfeasor’s pro rata share of the common liability.” G.L.c. 231B, §l(d).
U.S. Fire acknowledges that it has no right of contribution under Section 1(d), the provision that specifically addresses the contribution rights of liability insurers, because Peerless cannot be said to have been a joint tortfeasor with TDC and Burke in their negligent development, construction, and marketing of the Treadway Brook Estates Condominiums. Rather, U.S. Fire claims that Peerless was a joint tortfeasor with U.S. Fire under G.L.c. 93A and c. 176D for its alleged bad faith disclaimer of coverage to TDC and Burke. In short, U.S. Fire contends that it has a statutory right of contribution against Peerless under G.L.c. 23 IB for a pro rata share of the unspecified amount of the $1.75 million settlement allocated to resolve the bad faith claim because Peerless, too, acted in bad faith by disclaiming coverage.
This Court does not agree. Peerless does not become a joint tortfeasor with U.S. Fire simply because both acted in bad faith in disclaiming coverage on their respective insurance policies with TDC and Burke. Even if the unfair or deceptive act or practice that may trigger liability under G.L.c. 93A and c. 176D were deemed analogous to tortious conduct, the fact remains that the alleged misconduct of U.S. Fire and Peerless towards TDC and Burke is their alleged bad faith disclaimer of coverage with respect to separate insurance contracts. Assuming (without deciding) that a statutory right of contribution may exist as to such claims, that right would be limited to those who shared in the misconduct with respect to the same insurance policies issued by the same insurer. Therefore, since Peerless cannot be deemed a joint tortfeasor, U.S. Fire’s claim for statutory contribution in Count I must be dismissed.
Counts III-IV: Claims Via Subrogation
In its complaint, U.S. Fire alleges that, as a result of its settlement of the reach and apply action, it has become subrogated to TDC’s and Burke’s rights under *123 the Peerless policies. While the complaint uses the term “subrogation,” it appears that what U.S. Fire is actually contending is that TDC and Burke, as part of the Mutual General Release, assigned to U.S. Fire their rights under the Peerless policies, including their right to seek damages for breach of those insurance contracts and for Peerless’s alleged bad faith disclaimer of coverage.[2] Although the complaint does not include the Mutual General Release as an exhibit and it was not among the exhibits filed with this motion and opposition, this Court, for purposes of this motion to dismiss, must accept the allegations in the complaint as true and give the plaintiff all favorable inferences which can be drawn from those allegations. See Fairneny v. Savogran, 422 Mass. 469, 470 (1996); General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). Accepting those allegations as true, U.S. Fire has adequately alleged that TDC and Burke assigned to U.S. Fire their rights under the Peerless policies in return for the $1.75 million it received from U.S. Fire.[3]
Since U.S. Fire, as the alleged assignee of the contract rights of TDC and Burke, has no greater rights than those enjoyed by TDC and Burke, Peerless contends that the assigned claims are barred by the statute of limitations. The breach of contract claim, which has a six-year statute of limitations, is really two claims linked together — a claim for breach of Peerless’s obligation to defend TDC and Burke in the negligence action, and a claim for breach of Peerless’s obligation to indemnify TDC and Burke for the judgment. See Beaudette, Inc. v. Sentry Insurance, 94 F.Sup. 77, 100 (D.Mass. 1999). As to the latter, the judgment did not enter until March 7, 1996, so the six-year statute of limitations had not expired when the instant complaint was filed on December 11, 2000. See id. As to the former, TDC and Burke made a demand on Peerless for defense and indemnity in the negligence action on June 11, 1993, so this claim would be barred if TDC and Burke knew or should have known of the breach at any time before December 11, 1994. See McGuinness v. Cotter, 412 Mass. 617, 627 (1992). Here, where Peerless is alleged to have failed to respond to the demand for defense and indemnity, it is not clear when TDC and Burke knew or should have known from Peerless’s silence that it had disclaimed coverage on the policy. Since a motion to dismiss should only be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, ” and since it is not clear from the complaint when TDC and Burke knew or should have known of Peerless’s alleged breach, it is not appropriate for this Court to dismiss that part of the claim on statute of limitations grounds. See General Motors Acceptance Corp. 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
The G.L.c. 93A claim has a shorter statute of limitations — four years — so the question is whether TDC and Burke knew or should have known of facts that would give rise to this claim before December 11, 1996. See International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, 29 Mass.App.Ct. 215, 221 (1990) (accrual date for c. 93A claim is determined by the same principles as in common law tort actions). This shorter time period arguably will put the Chapter 93A claim in peril, but not via a motion to dismiss. While U.S. Fire, to prosecute this claim successfully, will need to show that TDC and Burke were not aware and should not have been aware of facts giving rise to this claim until at least December 11, 1996, it is also true that the facts necessary to learn of a Chapter 93A claim are more elusive than with a breach of contract claim, since “an insurer’s claim-handling acts or omissions are a paradigm of the kinds of acts or omissions that are inherently unknowable to the insured unless and until the insurer chooses to share them.” Palmi v. Metropolitan Property and Casualty Insurance Company, Massachusetts Superior Court (Jan. 25, 1999) (McHugh, J.) (9 Mass. L. Rptr. 614). In view of the deferential standard this Court must apply in a motion to dismiss, dismissal on this ground would not be appropriate.
Finally, Peerless contends that any claim that U.S. Fire is asserting that was assigned by Burke must be dismissed because he was in Chapter 7 bankruptcy proceedings when the settlement was executed. Peerless also contends that any claim assigned by TDC must be dismissed because TDC was voluntarily dissolved as a corporation in 1989 and ceased to exist after the three-year period given to wind up its affairs. As to Burke’s assigned claims, it is undisputed that Burke was in Chapter 7 bankruptcy proceedings at the time of the settlement, so all his assets, including any claims he may have had against Peerless, were the property of the bankruptcy estate under the control of the bankruptcy trustee. See 11 U.S.C. §541(a)(1); Cole v. Pulley, 18 Mass.App.Ct. 950, 951 (1984) (rescript). However, U.S. Fire alleges that the Chapter 7 Trustee joined in assigning Burke’s rights under the Peerless policies to U.S. Fire as part of the settlement. As to TDC’s assigned claims, it is true that TDC had been dissolved for ten years at the time of the settlement, but it is also true that, had it not assigned its claims, it could have brought this lawsuit itself simply by filing a revival certificate under G.L.c. 156B, §108. See Devlin Construction Corp. v. Driftway South Construction Corp., 14 Mass.App.Ct. 954 (1982) (rescript). Since TDC no longer has any stake in this litigation, having assigned its claims, and since TDC, if it had not assigned its claims, could still have brought these claims simply by filing a revival certificate, this Court will not dismiss the counts that rest on TDC’s assignment on this technical ground.
*124 Count II: Equitable Contribution
While never directly confronting the issue, Massachusetts appellate courts have recognized the right of an insurer to pursue an action for equitable contribution against a co-insurer. See The Traveler’s Ins. Co. v. Aetna Ins. Co. & others, 359 Mass. 741, 743 (1971) (rescript); Rubenstein & others v. Royal Ins. Co. of America, 44 Mass.App.Ct. 842, 852 (1998) (“Of course there is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under the doctrine of equitable contribution”). Yet, no Massachusetts appellate court has discussed the elements of or principles underlying such an action. See Hanover Ins. Co. v. Penn-America Ins. Co. et al., 12 Mass. L. Rptr. 443 (Mass. Super.) (Feb. 5, 2000). Consequently, this Court must look to other jurisdictions for guidance in applying equitable contribution to co-insurers.
“Equitable contribution is . . . the right to recover . . . from a co-obligor who shares such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others . . . Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers . . . The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by co-insurers, and to prevent one insurer from profiting at the expense of others." Truck Ins. Exchange v. Unigard Insurance Co., 79 Cal.App. 4th 966, 974 (2000). See also Hartford Cas. Ins. Co. v. Argonaut-Midwest Ins. Co., 854 F.2d 279, 283 (7th Cir. 1988) (Posner, C.J.) (distinguishing equitable contribution among co-insurers from contribution among joint tortfeasors and discussing apportionment of liability). “[T]he right of equitable contribution does not arise out of an express contract or agreement between the parties to indemnify each other. Rather, it is based upon equitable principles that imply a contract between the parties to contribute ratably toward the discharge of a common obligation.” Ohio Cas. Ins. Co. v. State Farm Fire and Cas. Co., 546 S.E.2d 421, 423 (2001). See also Truck Ins. Exchange, 79 Cal.App.4th at 974. ”Thus[,] where two or more persons are liable to pay a claim and one or more of them pays the whole of it, or more than his or her share, the one so paying may generally recover from the others the ratable proportion of the claim that each ought to pay.” Ohio Cas. Ins. Co., 546 S.E.2d at 423, citing Midwest Mut. Ins. Co. v. Aetna Cas. and Sur. Co., 216 Va. 926, 929 (1976) (internal quotations omitted).
However, “[i]n the context of insurance coverage, proof that the policies insure the same property is not sufficient to establish a common obligation; the policies in question must afford coverage for the same insureds and the same risk.” Ohio Cas. Ins. Co., 546 S.E.2d at 423; accord The Home Indemnity Co. v. General Accident Ins. Co. of America, 213 Ill.App.3d 319, 321 (noting that primary and excess policies do not cover the same risks). Moreover, “(a]s these [equitable] principles do not stem from agreement between the insurers, their application is not controlled by the language of their contracts with the respective policy holders.” Truck Ins. Exchange, 79 Cal.App.4th at 974 (citations and quotations omitted). “Even so, absent compelling equitable reasons, courts should not impose an obligation on an insurer that contravenes a provision in its insurance policy.” Id. at 974. Consequently, when the insured is barred from pursuing an insurance claim against Insurance Company A because, contrary to the terms of the policy, the insured voluntarily made a non-emergency payment without the prior consent of the insurance company, then Insurance Company B, even though it made full payment on its claim, should not be able to obtain equitable contribution against Insurance Company A. See Catholic Relief Ins. Co. v. Liquor Liability Joint Underwriting Ass'n, 8 Mass. L. Rptr. 80 (Mass. Super.) (March 30, 1998).
Peerless argues that Massachusetts law should not permit equitable contribution among co-insurers when there is no subrogation or assignment of the insured’s claims, because one co-insurer has no duty of care to another co-insurer. This Court acknowledges that an insurer’s duty of care is to the person or entity it insures, not to another company that happens to insure the same risk. Yet, when two insurance companies jointly insure the same risk, and one insurance company accepts its coverage responsibilities, defends the claim, and pays the judgment while the second insurance company evades its obligations and pays nothing, equity demands that the responsible insurance company have legal recourse to ensure that the irresponsible company pays its fair share and reimburses the responsible company for having borne the full brunt of coverage. The law cannot always rely on contract principles of subrogation and assignment to accomplish this equitable result — the insured, once paid in full, may have no incentive to subrogate or assign its rights, and the responsible insurance company, in the absence of a prior contractual agreement, cannot withhold its payment on the insurance claim until the insured agrees to subrogate or assign. Without this equitable principle, the law provides an incentive for a co-insurer to run away from a claim in the hope that the other co-insurer will not. Generally, equity does not reward those who shirk their obligations, and insurance law should not be an exception to this general rule. Whether one calls it equitable contribution or equitable subrogation, see Harford Casualty Insurance Co. v. New Hampshire Insurance Co., 417 Mass. 115, 124 n. 7 (1994), there must be an *125 equitable principle that permits one co-insurer to seek contribution from another co-insurer who has violated its coverage obligations, and left the “good” co-insurer holding the bag.[4] Therefore, Peerless’s motion to dismiss this equitable contribution claim must be denied.[5]
ORDER
For the reasons stated above, Peerless’s motion to dismiss is ALLOWED with respect to Count I (Contribution under G.L.c. 23 IB), and DENIED with respect to Counts II (Equitable Contribution), III (Declaratory Judgment), IV (Breach of Contract), and v. (Violation of G.L.c. 93A and 176D).

 TdC and Burke were nominal defendants in the reach and apply action.

 Although this Court need not decide this issue to decide this motion, it should be noted that, if a subrogation or assignment were not expressly provided for in the Mutual General Release, it is not clear that subrogation in these circumstances would be implied as a matter of law. “Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor or loss victim, called the subrogor) against the third primarily liable party." Frost v. Porter Leasing Corp., 386 Mass. 425, 426-427 (1982) (emphasis added). See also The Traveler’s Ins. Co. v. Graye, 358 Mass. 238, 240-241 (1970). “The doctrine of subrogation applies ... to payments under policies of insurance. Upon payment, the insurer is entitled to share the benefit of any rights of recovery the insured may have against a tortfeasor for the same loss covered by the insurance." Frost, 386 Mass. at 427 (emphasis added). “If the insured recovers from the tortfeasor, the insurer’s right becomes a right to the proceeds in the hands of the insured.” Id. An insurer’s right of subrogation may be reserved in an agreement between the insurer and the insured (e.g., through language in the insurance policy) or it may arise “by implication, as a matter of general law.” Frost, 386 Mass. at 427. The reason for implied subrogation under contracts of insurance is to prevent an unwarranted windfall or duplicative recovery to the insured (i.e., if the insured recovers on the insurance policy and then recovers from the tortfeasor). Id. at 428. Such duplicative recovery is viewed as an inefficient distribution of resources available for accident compensation. Id. In such a situation, “(s)ubrogation returns any excess to the insurer, who can then recycle it in the form of lower insurance costs.” Id. It is not plain that this reason to imply subrogation applies to subrogation of an insured’s contract rights under another insurance policy.

 The Court notes that paragraph 20 of the Complaint, which is the only paragraph that quotes from the Mutual General Release, states that the “Treadway plaintiffs,” referring to the Condominium Trust, agreed to cooperate with U.S. Fire in pursuing its claims for contribution against other insurance carriers; it is silent as to whether TDC and Burke joined in that (or a similar) agreement. However, subsequent paragraphs declare that this settlement resulted in the subrogation of TDC’s and Burke’s rights under the Peerless policies to U.S. Fire.

 This Court recognizes that U.S. Fire can hardly be characterized as a “good” insurer in this case, since it sought to evade its coverage responsibilities until the risks of the reach and apply action caused it to agree to a settlement. Nonetheless, U.S. Fire can now be said to have paid its fair share and should not be denied the opportunity to lighten its burden by pressing a co-insurer to pay its fair share as well. For this reason, this Court rejects Peerless’s argument that U.S. Fire’s “unclean hands" should bar its equitable claims. Even if U.S. Fire’s hands once were dirty, the Condominium Trust, through its reach and apply action, have forced it to cleanse them, but Peerless’s hands allegedly still remain unwashed. In other words, the “unclean hands” doctrine cannot be invoked by a party whose hands are allegedly dirtier than the plaintiffs.

 This Court recognizes that Peerless contends that this equitable claim, if it exists, is barred by the statute of limitations. However, there is no need here to determine precisely which statute of limitations should apply to this equitable claim because, in view of the deferential standard applied to a motion to dismiss, it would not be appropriate to dismiss on statute of limitations grounds under any reasonable theory.