NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12020

SUFFOLK CONSTRUCTION COMPANY, INC.  vs.  BENCHMARK MECHANICAL SYSTEMS, INC., & another.[1]


Suffolk.     May 2, 2016. – August 12, 2016.

Present:  Gants, C.J., Spina, Botsford, Duffly, Lenk, & Hines, JJ.[2]


Uniform Commercial Code, Secured creditor.  Practice, Civil, Motion to dismiss, Summary judgment, Statute of limitations.  Subrogation.  Indemnity.  Unjust Enrichment.  Restitution.  Limitations, Statute of.


Civil action commenced in the Superior Court Department on April 22, 2013.

A motion to dismiss was heard by Christine M. Roach, J.; a motion for judgment on the pleadings was heard by her; cross motions for summary judgment were heard by Janet L. Sanders, J.; and entry of separate and final judgment was ordered by Sanders, J.

The Supreme Judicial Court granted an application for direct appellate review.

---

[1] Reading Co-Operative Bank.

[2] Justice Duffly participated in the deliberation on this case prior to her retirement.

R. Robert Popeo (Paul J. Ricotta with him) for the plaintiff.

Mark W. Corner (Peter H. Sutton with him) for Benchmark Mechanical Systems, Inc.

Eric P. Magnuson (Nelson G. Apjohn with him) for Reading Co-Operative Bank.

SPINA, J.   In Reading Co-Operative Bank v. Suffolk Constr. Co., 464 Mass. 543, 551 (2013) (Suffolk I), we held that "G. L. c. 106, §§ 9-405, 9-607, and 9-608, provide a comprehensive scheme" that allowed Reading Co-Operative Bank (bank) to require Suffolk Construction Company, Inc. (Suffolk), to fully perform its obligations under a collateral assignment of payments under a subcontract between Suffolk and Benchmark Mechanical Systems, Inc. (Benchmark), to secure a debt owed by Benchmark to the bank even if the value of the collateral exceeded the amount owed to the bank.  After that decision, Suffolk commenced this action to recover the surplus that resulted after the bank applied that collateral to satisfy Benchmark's debt, plus costs of collection, pursuant to G. L. c. 106, § 9-608.[3]  Suffolk's

---

[3] General Laws c. 106, § 9-608 (a) (1), (4), states:

"(a) Application of proceeds, surplus, and deficiency if obligation secured.  If a security interest . . . secures payment . . . of an obligation, the following rules apply:

"(1) A secured party shall apply or pay over for application the cash proceeds of collection . . . in the following order to:

equitable claims for implied subrogation and implied indemnification were dismissed under Mass. R. Civ. P. 12 (b) (6) and 12 (c), 365 Mass. 754 (1974). Its common-law claims were dismissed as time-barred under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). Suffolk appealed, and we granted its application for direct appellate review. We now hold that Suffolk's common-law claims are time barred, but it has stated equitable claims to prevent unjust enrichment and a windfall for which relief can be granted.

1. Background. The following facts, taken mostly from Suffolk I, are undisputed. Benchmark assigned to the bank, as collateral for a loan it had with the bank, payments owed to Benchmark by Suffolk pursuant to a subcontract. Suffolk agreed

---

"(A) the reasonable expenses of collection . . . and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party;

"(B) the satisfaction of obligations secured by the security interest . . . under which the collection . . . is made; and

"(C) the satisfaction of obligations secured by any subordinate security interest in or other lien on the collateral subject to the security interest . . .

". . .

"(4) A secured party shall account to and pay a debtor for any surplus, and the obligor is liable for any deficiency."

to send the payments to the bank, but mistakenly sent them to Benchmark. Suffolk sent twelve checks totaling $3,822,500.49 to Benchmark between June 14, 2004, and December 30, 2004. Benchmark deposited the checks to its account and never forwarded the monies to the bank. The last deposit was made on January 3, 2005. Benchmark ceased operations in July, 2005, and turned over its assets to the bank for liquidation. Benchmark was dissolved as a corporation on May 31, 2007. At that time Benchmark was indebted to the bank on its loan in the amount of $1,499,149.42. As a result of the liquidation of Benchmark's assets, the bank applied $430,402.38 to Benchmark's indebtedness. The bank then commenced an action against Suffolk under G. L. c. 106, § 9-405, for the full amount of the payments Suffolk should have sent to the bank pursuant to the payment assignment. On appeal, we held that § 9-405 displaced the common law, that the bank was entitled to recover the full value of the assigned collateral ($3,822,500.49) under § 9-405 rather than its actual damages, and that the common-law doctrine of mitigation did not apply. Id. at 546, 522, 555.

Suffolk paid the judgment ordered by this court, which, with interest and costs, amounted to $7,640,907.45 (judgment payment). Suffolk then filed a multicount complaint, as amended, in the Superior Court against the bank and Benchmark, asserting common-law claims to establish itself as a judgment

lien creditor of Benchmark under G. L. c. 106, § 9-608 (a) (1) (C), or alternatively, as a "debtor" under § 9-608 (a) (4), to recover any surplus remaining after the bank applied Suffolk's judgment payment to Benchmark's outstanding debt to the bank and the bank's collection costs.[4,5]  It also asserted equitable claims of implied subrogation and implied indemnification.  By agreement of the parties, a preliminary injunction issued, enjoining the bank from transferring to Benchmark any portion of the surplus from Suffolk's judgment payment.

A judge in the Superior Court (rule 12 judge) allowed in part the bank's motion to dismiss under rule 12 (b) (6), and Benchmark's motion for judgment on the pleadings under rule 12 (c).[6]  She dismissed the counts alleging theories of subrogation and indemnification on grounds that these claims sought to recover funds for which Suffolk had been primarily, rather than secondarily, responsible, such that Suffolk was not entitled to the equitable relief sought.

---

[4] The National Labor Relations Board later intervened to assert claims against Benchmark totaling $27,770.25.

[5] The reasonableness of the bank's collection costs is in dispute.

[6] The judge treated the motion under rule 12 (c) as a motion under rule 12 (b) (6), 365 Mass. 754 (1974).

Subsequently, on cross motions for summary judgment under rule 56, a different judge (rule 56 judge) allowed Benchmark's motion as to the counts of Suffolk's complaint alleging theories of restitution for unjust enrichment, reimbursement, money had and received, and restitution for money paid by mistake, on grounds that they were barred by the six-year statute of limitations applicable to contracts. See G. L. c. 260, § 2. She also dismissed the count seeking a determination that Suffolk was entitled to the surplus because it was the "debtor" for purposes of G. L. c. 106, § 9-608 (a) (4).[7]

2. <u>Implied subrogation and indemnification</u>. The rule 12 judge dismissed the counts alleging implied subrogation and indemnification. She reasoned that because Suffolk was "primarily" liable to the bank under the payment assignment, it was not entitled to implied subrogation or implied indemnification.

Implied "[s]ubrogation is an equitable adjustment of rights that operates when a creditor . . . is entitled to recover from

---

[7] The parties stipulated to entry of separate and final judgment as to the eight counts that were dismissed under rules 12 and 56, 365 Mass. 824 (1974). See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). They further stipulated that the three remaining counts for (1) reach and apply, (2) remedies under G. L. c. 106, § 9-625, and (3) constructive trust, would be dismissed with prejudice, and Suffolk waived any right of appeal with respect to such dismissal, on condition that the separate and final judgment dismissing all eight counts is affirmed in its entirety on appeal.

two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor, . . . called the subrogor) against the third, primarily responsible party." (Emphases added.) Frost v. Porter Leasing Corp., 386 Mass. 425, 426-427 (1982). The underlying principle of implied subrogation is to prevent an unwarranted windfall, something disfavored in the law. Id. at 428.

Implied indemnification is an equitable principle that creates an obligation for reasons of justice, akin to a duty to make restitution (quotations and citations omitted). See Mike Glynn & Co. v. Hy-Brasil Restaurants, Inc., 75 Mass. App. Ct. 322, 326 (2009). "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Santagate v. Tower, 64 Mass. App. Ct. 324, 330 (2005), quoting Restatement of Restitution § 76 (1937). Both implied subrogation and implied indemnification are viable claims in the circumstances of this case.

The rule 12 judge focused on the words "primary legal responsibility" in Frost and concluded that because Suffolk was "primarily" liable to the bank under the payment assignment by

Benchmark, it was not entitled to equitable subrogation or equitable indemnification. Because we are concerned with the equities of the over-all situation, however, it is appropriate to examine the bigger picture, not just the specific obligations of Suffolk. Suffolk certainly was <u>directly</u> liable to the bank, as we held in <u>Suffolk I</u>, but the <u>primary</u> obligor in the transaction was Benchmark. Payments owed by Suffolk to Benchmark were merely partial collateral for Benchmark's debt to the bank. The bank could have proceeded against either Benchmark or Suffolk, or both. For obvious reasons it chose Suffolk. Had that collateral been insufficient to satisfy Benchmark's debt, the bank's only remaining recourse would have been to sue Benchmark.

When determining whether receipt or retention of a benefit is unjust we look to the reasonable expectations of the parties. See <u>The Community Bldrs., Inc</u>. v. <u>Indian Motocycle Assocs</u>., 44 Mass. App. Ct. 537, 560 (1998). Benchmark had no reasonable expectation of receiving and retaining the payments mistakenly made by Suffolk. Having retained those payments, it has even less reason to expect to receive the surplus derived from Suffolk's judgment payment to the bank after the bank satisfied Benchmark's indebtedness. Basic fairness requires that Benchmark not enjoy any of the surplus derived from Suffolk's

judgment payment to the bank, where Benchmark had wrongfully retained the monies mistakenly sent by Suffolk.

The application of equitable principles to the distribution of surplus, although not expressly appearing in G. L. c. 106, § 9-608 (a), is not inconsistent with that section.  Indeed, G. L. c. 106, § 1-103 (b), contemplates precisely such application.  Section 1-103 (b) states:  "Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . supplement its provisions."  See The French Lumber Co. v. Commercial Realty & Fin. Co., 346 Mass. 716, 719 (1964) (Uniform Commercial Code [UCC] does not bar equitable subrogation claim); Summers, General Equitable Principles Under Section 1-103 of the Uniform Commercial Code, 72 Nw. U. L. Rev. 906, 920-921 (1978) (antiwindfall principle and unjust enrichment should be applied to art. 9 of the UCC in light of § 1-103).

Suffolk's subrogation and indemnification claims did not ripen until a surplus materialized from the bank's application of Suffolk's judgment payment to Benchmark's indebtedness.  At that point, when Benchmark stood to receive a windfall that in all good conscience it should not have accepted, Suffolk's subrogation and indemnification claims accrued.  Suffolk's civil action as to those claims was timely.  "Occasionally, a claimant will be able to point to different grounds of unjust enrichment

occurring at different stages of the parties' dealings with each other.  "Although restitution on one theory may be time-barred, restitution on another theory may yield a viable claim."  Restatement (Third) of Restitution and Unjust Enrichment (2011), § 70 comment f.  Such are the circumstances here.

Suffolk's subrogation and indemnification claims are inherently different from its other claims.  They also developed at different times.  Indeed, Suffolk emphasizes that under these theories, it stands in the shoes of Benchmark as to the surplus flowing from its judgment payment.  Suffolk acknowledges that because it stands in Benchmark's shoes under these claims it is not, at least as to them, a subordinate lien creditor, and stands behind subordinate lien creditors for purposes of G. L. c. 106, § 9-608 (a) (4), as to which Suffolk argues that it qualifies as the "debtor."  In this regard Suffolk contends that summary judgment dismissing the count seeking a determination that it is the "debtor" for purposes of § 9-608 (a) (4) is error.  We agree.  Suffolk's equitable claims of subrogation and indemnification allow it to stand in Benchmark's shoes as to the surplus flowing from its judgment payment, which is the source of Benchmark's potential windfall and unjust enrichment.  In the event of a surplus from some other source, Suffolk is neither a subordinate lien creditor nor the debtor.  The result in this

case is determined by principles of equity applied to the unique circumstances presented.

Finally, Suffolk argues that because our review is de novo, see Champa v. Weston Pub. Schs., 473 Mass. 86, 90 (2015) (rule 12 [c]), and Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 231 (2015) (summary judgment), we should direct entry of judgment in its favor. Where the rule 12 judge did not consider matters outside the pleadings and expressly treated the rule 12 (c) motion as a motion to dismiss under rule 12 (b) (6), and where Suffolk did not request entry of judgment in its favor in its opposition to the rule 12 (c) motion, we decline to order entry of judgment for Suffolk on its claims for subrogation and indemnification.

3. Summary Judgment. Summary judgment was granted against Suffolk as to the three counts alleging (1) reimbursement for money mistakenly paid and fraudulently retained, (2) money had and received, and (3) restitution for money paid by mistake. The basis for dismissal of these counts was that they were time barred. These claims have origins in the common law, and they are similar in nature. See New Bedford v. Lloyd Inv. Assocs., 363 Mass. 112, 118 (1973). See also Mass. R. Civ. P. 84, Appendix of Forms, forms 7 and 8, Mass. Ann. Laws Court Rules, at 1312-1313 (LexisNexis 2015-2016). The best known of the counts here pleaded, money had and received, "is broad and

includes all money received by the defendant which in equity and good conscience belongs to the plaintiff." G.E. Lothrop Theatres v. The Edison Elec. Illuminating Co. of Boston, 290 Mass. 189, 192 (1935). The claims are quasicontractual, and are subject to the six-year statute of limitations applicable to contracts. New Bedford, supra at 118, 119. A cause of action under these claims accrues upon "receipt of payment without regard to when the mistake is discovered," id. at 119, and it is immaterial that the cause of action is presented as a claim at law or in equity. Id. The last mistaken payment was deposited on January 3, 2005. The statute of limitations ran on January 3, 2011, as to these three counts. The instant action commenced on April 22, 2013, well beyond the six-year statute of limitations.

Suffolk maintains that these claims are not time barred because in Suffolk I we said, after acknowledging the harsh result occasioned by our holding, that "Suffolk nonetheless has recourse to mitigate the excessive loss occasioned by double payment. It may bring suit against [Benchmark] . . . to recover the misdirected payments, and thereby establish itself as a subordinate creditor in line for disbursement of excess funds recovered by the bank." Suffolk I, 464 Mass. at 554. The quoted language is dictum, and we were describing the remedy available to Suffolk in the ordinary course to recover the

payments mistakenly made to Benchmark. The statute of limitations was not an issue in Suffolk I, and we were not addressing the potential loss of that remedy if the action had not been commenced within the applicable statute of limitations. Moreover, the reference to a "subordinate creditor" in G. L. c. 106, § 9-608, as applied to the circumstances of this case, was to a judgment creditor. Suffolk necessarily would have to have had its claim for payments mistakenly made to Benchmark reduced to a judgment. Here, the claims to recover judgment against Benchmark for the amount of payments mistakenly made were time barred. Summary judgment correctly was granted.

Summary judgment against Suffolk also was granted on the count for restitution for unjust enrichment, also on the ground that it was time barred. This count is based on theories of implied subrogation and indemnification, and seeks only to prevent Benchmark from receiving a windfall. Suffolk does not seek a judgment on this count against Benchmark for the moneys paid by mistake, and it does not seek to establish itself as a judgment creditor for purposes of G. L. c. 106, § 9-608. For reasons previously discussed with respect to the counts based on theories of subrogation and indemnification, this claim is not barred by the statute of limitations. It did not accrue until a surplus arose. The claim is viable, and judgment must be reversed as to this count.

Summary judgment against Suffolk was granted on its count seeking a determination that it is the "debtor" for purposes of G. L. c. 106, § 9-608 (a) (4), and as such is entitled to the surplus. The rule 56 judge reasoned that a "debtor," as defined in G. L. c. 106, § 9-102 (28) (A), and illuminated in a comment to that section of the statute, is a person who has "a stake in the proper enforcement of a security interest by virtue of [that person's] non-lien property interest (typically, an ownership interest) in the collateral." See, 9A W.D. Hawkland & F.H. Miller, UCC Series, § 9-102, comment 2(a) (2001). She concluded that Suffolk is not such a person. In most cases she would have been correct, but Suffolk's claim has a further dimension. Suffolk alleged in its complaint that it is the debtor by virtue of being Benchmark's subrogee. For reasons described in the previous section of this opinion, this claim, based on the theory of implied subrogation, is viable. Summary judgment on this count must be reversed.

In conclusion, so much of the judgment that dismisses the subrogation and indemnification counts (counts 3, 6, and 7), the count alleging restitution for unjust enrichment (count 1), and the count seeking a determination that Suffolk is the debtor for purposes of G. L. c. 106, § 9-608 (a) (4) (count 11), is reversed. So much of the judgment that dismisses the common-law

counts (counts 2, 4, and 5) is affirmed.  The case is remanded for further proceedings consistent with this opinion.

<u>So ordered</u>.